PRIMARY ELECTION CASE.

CHARLES McINNIS ET AL. <em>v.</em> JAMES D. THAMES, DISTRICT
ATTORNEY ET AL.

CONSTITUTIONAL LAW. *Constitution* 1890, *sec.* 247. *Primary elections.*
*Laws* 1902, *p.* 105. *Elections. Official ballots.*

    It is in the power of the legislature to provide that nominations of
    candidates for public offices shall be made by political parties only
    through primary elections, and that nominations of such parties
    otherwise made shall not be recognized in the preparation of offi-
    cial election ballots.

FROM the circuit court of Issaquena county.

HON. GEORGE ANDERSON, Judge.

Thames, district attorney, and others, appellees, were plain-
tiffs in the court below; McInnis and others, appellants, the

executive committee of the Democratic party of Issaquena county, were defendants there.

Appellees, the district attorney and several citizens, taxpayers, Democrats, and legal voters of Issaquena county, filed the petition in this case, in the circuit court of Issaquena county, against appellants, members of and constituting the Democratic executive committee of said county, averring that a special election had been ordered in said county to fill a vacancy in the office of justice of the peace; that appellants, as such committee, had ordered a Democratic convention for the purpose of nominating a party candidate to be voted for at the special election in violation of the act of the legislature approved March 4, 1902, Laws 1902, p. 105, *et seq.* The prayer was for a mandamus to compel defendants in the court below to order and have held a Democratic primary election to nominate said candidate as required by said act of the legislature. To this petition appellants, defendants below, demurred, the demurrer was overruled, and final judgment entered directing them to proceed and hold a primary election. From which judgment defendants appealed to the supreme court.

On the hearing of the appeal counsel on both sides united in a request that the court should pass upon the constitutionality of the act of 1902, each side waiving all other questions.

*McWillie & Thompson*, for appellants.

There are some subject matters which are entirely beyond the scope of legislation, and, in our judgment, the legislature exceeded that scope in the passage of the act under consideration. What would your honors think of an act of the legislature which undertook to provide for and regulate the election of the officers of a religious denomination in this state? The entire purpose of the constitution is to secure the citizens of the state in their rights to life, liberty, and property. Among these rights is the privilege of conferring together and agree-

ing upon policies of government and of making effort, within the general election laws of the state, to promote their views of public matters.

Could the legislature prevent any two or three citizens of the state from assemblying and agreeing that a particular individual was especially qualified and fitted by education, habits, and brain force to fill creditably the office of governor of the state? Manifestly an act of the legislature which undertook to prevent such a conference between two or three citizens would be violative of natural rights, as much so as would an act of the legislature which should undertake to provide that every citizen should take his meals at stated hours. If three citizens cannot be so restrained, three hundred or three thousand cannot be, and a convention is lawful. Appellants are "mandamussed" not to hold a convention.

We recognize the rule that he who asserts the unconstitutionality of an act of the legislature should be able to put his hand upon that clause of the constitution which it violates, but we know, too, that there is an exception to this general proposition, and that an act of the legislature which violates the entire scope and purposes of government is as void as one that clearly violates a particular section of the fundamental law. Turning now to our constitution, we first call the court's attention to sec. 5, which is in these words: "All political power is vested in and derived from the people; all government of right originates with the people, is founded upon their will only, and is instituted solely for the good of the whole." Any act of the legislature which violates this section is void. We recognize that it is difficult to define the scope of the section, but we insist that an act of the legislature which deprives the people of a natural right is void.

Coming more specifically to the provisions of the constitution which we think are violated, we wish to put emphasis upon the view that the act of the legislature under consideration is

violative of secs. 247 and 250 of the constitution, and perhaps violative of sec. 61.

Section 247 provides that "the legislature shall enact laws to secure fairness in party primary elections, conventions, and other methods of naming party candidates." This section expressly recognizes party conventions and other modes of naming party candidates, besides primary elections. The act under consideration absolutely negatives the right to hold a party convention. By its 16th section it provides that the name of any candidate shall not be placed upon the official ballot in general or special elections, as a party nominee, who is not nominated in pursuance of the provisions of the act, and that the election of any party nominee who shall be nominated other than by a primary election shall be void; and he shall not be entitled to hold any office to which he may have been elected. Remember that the averments of the petition are that appellants were about to have a nominating convention, and that the mandamus which was granted and sustained by the court below prohibits this. The question is: Can the legislature prohibit that which the constitution itself recognizes as a right? Let us read sec. 247 of the constitution, omitting all unnecessary words, and we have: "The legislature shall enact laws to secure fairness in party conventions." Does not this language, by necessary implication, grant the right to hold a convention? When the constitution says that the legislature shall secure fairness in party conventions, does it not limit or deny the right of the legislature to prevent conventions? The power to preserve the peace does not involve the right to kill every person who might, perchance, disturb the peace. Could the states of this union, because they are prohibited from impairing the obligations of contracts, prohibit the making of all contracts, for fear that if contracts were made their obligations might be impaired? Manifestly an injunction to pass laws to secure fairness in party conventions must negative the

right to prohibit conventions. How can the legislature, if it prohibits conventions, pass and have enforced laws securing fairness in them? Mind you, the legislature has no option; the fundamental law has spoken. The legislature shall pass, and of course the injunction proceeds upon the idea that they will be enforced, laws to secure fairness in conventions. There can be no laws to secure fairness in conventions if there be no conventions.

But the act of the legislature under consideration also violates sec. 250 of the constitution, which is in these words: "All qualified electors and no others shall be eligible to office, except as otherwise provided in this constitution." The "except as otherwise provided in this constitution" cuts no figure here, and we have the simple constitutional provision: "All qualified electors shall be eligible to office." Does not the act of the legislature under consideration violate this section and violate it most flagrantly? We are aware of the provision of the ordinance of the constitutional convention on the subject of official ballots, and we are aware that the provisions of the ordinance are carried into § 3652, code 1892. The code section itself would be void but for the fact that it was enacted by the constitutional convention. By the parenthetical note at its end, and by comparison, it is shown to be but a restatement in the body of the code of sec. 2 of the election ordinance of the constitutional convention of 1890.

Now, the election ordinance provides: "Section 18. The legislature shall have power to enact laws on the subject of this ordinance necessary for its efficiency and not inconsistent with its true intent and meaning. After January 1, 1896, this ordinance may be repealed or amended by the legislature, but shall not be amended so as to conflict with any of the provisions of this constitution." The power of the legislature is not so great as was the power of the convention which adopted the election ordinance. The convention could have put anything in the election ordinance that its wisdom might have dictated,

and that, too, without reference to whether or not it violated the sections of the constitution itself; but when the ordinance comes to deal with the power of the legislature, it expressly provides that the legislature should be subject to and limited by constitutional provisions. If, therefore, there be provisions in the ordinance which are in conflict with constitutional provisions, the ordinances are valid, but when the legislature undertakes to deal with the subject matter, it cannot infringe upon any provision of the constitution itself. Every elector is eligible to and has a right to be elected to office. The legislature cannot deprive him of that right. Practically the act of the legislature under consideration does deprive an elector, the nominee of a political party, of the right to be elected to office, and the right to hold the office unless, forsooth, he is prepared to surrender a constitutional right to receive the favor of his fellow citizens by convention, if those fellow citizens may see proper to so advance his interests, and he is compelled to lose their support or submit to a primary election. What would you do in the event an elector received a majority vote at the general election, and it was objected to his holding the office, that he had been elected as a party nominee without having been the nominee at a primary election? The truth is, the act of March 4, 1902, deals with shadows and not with the substance of things. It undertakes to make something entirely outside of the scope of government supplant governmental affairs and functions. How absurd, for instance, is sec. 18 of the act. The legislature is powerless to enforce it. No limitation can be put by a preceding legislature upon the rights of a following legislature in the exercise of its duty to elect United States senators.

It has generally been held (Am. & Eng. Enc. Law [2d ed.], title, Elections) that an Australian ballot law is unconstitutional unless it provides for a blank space on the official ballot in which the voter may write the name of the person for whom he desires to vote, where such person's name is not printed upon

the ballot. Section 16 of the act of 1902 would not allow a qualified elector to hold office, although ninety-nine out of every one hundred of the voters had by previous agreement cast their ballots for him by writing his name upon the ballots; such an agreement would be a convention if resulting from a personal conference; thus the authorities referred to are applicable.

But, does not the act under consideration also violate sec. 61 of the constitution? That section is in these words: "No law shall be revived or amended by reference to its title only, but the section or sections as amended or revived shall be inserted at length." The act under consideration certainly amends § 3652, code 1892, and sec. 2 of the election ordinance, without complying with the requirements of sec. 61 of the constitution. Section 16 of the act radically changes the provision applicable to the question as to what names shall appear on the official ballot in general or special elections. It is a shocking amendment to § 3652, code 1892, and sec. 2 of the election ordinance. You will find in sec. 23 of the act that it is said: "That so much of § 3652 of the code of 1892, and all other laws which are in conflict with the provisions of this act, be and the same are hereby repealed." It will not do to say that the section is repealed, because only so much of it as is in conflict with the act of March 4, 1902, is repealed, and the balance is left in full force. So that in truth it is but an amendment to the code section. Now, the law as amended was not, as required by sec. 61, inserted at length in the amendatory act, and sec. 16 of the statute, under consideration, is violative of the constitution, and is not the law, and the judgment appealed from in this case should be reversed.

*H. P. Farish,* on the same side.

The legislature in enacting the act, approved March 4, 1902, restricting and confining the several political parties of the state to the method of primary election for the nomination of their candidates, clearly exceeded its authority as provided in

sec. 247 of the constitution, and as contemplated by the constitution.

Section 250 of the constitution provides, "That all qualified electors, and no others, shall be eligible to office except as otherwise provided in this constitution." Under this provision of the constitution all qualified electors except as otherwise provided by the constitution are entitled to the right to stand for and be elected to office, but under the provisions of said act of the legislature, sec. 16, an elector is deprived of this privilege unless nominated by primary election. If an elector is elected to office, being the nominee of a political party, nominated otherwise than by primary election, he is not entitled under said act of the legislature, sec. 16, to hold the office to which he is elected. This is clearly in violation of sec. 250 of the constitution, and is a restriction on the qualification for office other than provided by the constitution, and evidently not contemplated by the constitution. Under the provisions of said act of the legislature, sec. 9, the authority to determine and fix the qualification of electors is delegated to the executive committee of the several political parties of the state, which is in violation of the constitution.

Under the provisions of said act, sec. 10, a poor man is deprived of his constitutional right to stand for and be elected to office. It is in the power of the several political parties of the state to prevent any elector who is not rich being elected or standing for election to office, which is a restriction not contemplated by the constitution.

Said act of the legislature denies to candidates a fair and equal right to stand for and be elected to office, and does not secure fairness in party primary elections.

The act of the legislature in question does not secure fairness for the reason that under its provisions a minority candidate may be nominated. For instance, say there are five candidates for an office, and one of them has a small plurality over the highest of the other four,, and this plurality comes from counties

having a majority of electoral votes, he becomes the nominee, although he has not a majority in any single county, nor in the whole state. This state of affairs manifestly does not comply with the constitutional requirement of fairness.

Again, in case of death or resignation of the nominee just before an election, it is impossible, under the provisions of the act, for the party to supply his place, for the party can only act through a primary election, and there may not be time to so act.

*Monroe McClurg,* Attorney-General, for appellees.

The test is whether the legislature had constitutional power to say that a political party shall not make a nomination for any political office that will be recognized by law otherwise than by primary election. The statute complained of as being unconstitutional has for its central purpose, not fairness in primary elections, but primary elections and nothing else for party nominations.

Section 247 of the constitution merely recognizes the fact that, at its date and previously, the people had adopted conventions and other methods of making party nominations, not undertaking to secure to them irrevocably the convention plan. No violence is done this section by this statute, because the right of the people to assemble and agree upon a candidate is not prohibited. They may do that, but must submit their convention choice to a test at the polls. No right to meet and discuss men or measures is infringed by this requirement.

Section 250 of the constitution was never intended to secure to all qualified electors the right to hold office regardless of such reasonable regulations of the method of obtaining it as the legislature might deem wise to prescribe. To so hold, the qualified elector could complain that the Australian balloting system, or the system of registration, in those details provided by the statute, was an infringement of his right to hold office be-

cause of restrictions upon the freedom of conduct of electors who desired to vote for him.

No additional qualification for office holding is prescribed in this law. The provision forbidding the names of nominees other than of primary elections from being placed on the ticket, and prohibiting persons otherwise nominated from holding the office, is intended to secure enforcement of the law by providing a penalty for its violation.

*E. F. Noel,* on the same side.

The legislature provides that nominations for state, district, and county offices shall be made by primary . elections, with qualifications and regulations similar to those of general elections; and that none except those so chosen shall be entitled to places on official ballots as party nominees, under penalty of forfeiture of office, if put upon such ballots as nominee. The provision in regard to putting the names of candidates on official ballots, through petitions, are not altered or repealed.

The sole purpose of the act was to secure fairness in naming party candidates by restricting the various possible methods of nomination to the one method which gave the qualified voters of each party the same rights in the selection as in the election of candidates, and under the same protection.

The question for consideration is, cannot a law be enacted in the interest of fairness that will secure to each qualified elector of a party the same free, direct, and honest expression of choice in the selection of party nominees as is offered in the subsequent election of candidates?

The same object should be sought in every fair nomination that is sought in every fair election, the finding out, and carrying into effect, the will of the majority, or plurality, of those qualified to participate.

Experience has proven that no election, worthy of the name, can be held unless those qualified to participate are afforded

opportunity of expressing individual preference by a secret ballot. All other methods of election are fraught with such evils as practically amount to condemnation. The same experience, applied to the selection of candidates, proves that there is no other fair method of nomination than that by which each individual can express, and have carried into effect, his personal preference.

There is nothing in sec. 247 of the constitution which prohibits the legislature from selecting any one method in preference to another. The disjunctive term "or" is used instead of "and;" the terms "primary elections and conventions" cannot possibly have any effect other than limiting "other methods" to "methods" of like nature with the two mentioned.

"Participation in the elective franchise is a principle rather than a right, and it is granted or denied upon grounds of general policy." Cooley on Con. Lim. (6th ed.), 752. This principle is upheld by the United States supreme court, and by numerous other decisions.

Article 12 of our constitution deals with several subject matters pertaining to elections, and entirely omits mention of several others. It affects qualifications of voters, and the time of holding general elections. It contains no restriction upon the power of the legislature to deal with the question of where elections shall be held, and the methods by which they shall be conducted, other than its allusions to the ordinance, whose operation expired in 1896.

These two subject matters are left entirely to legislative discretion, so long as that discretion is exercised with no special impairment of any right otherwise conferred. The voter has no more right to attack the law which prescribes the official ballot, or the manner in which names of candidates are to be put thereon by nomination, or petition, than he has to insist to have his vote taken *viva voce,* or upon a ballot he has written.

The legislative power to require the official ballot carries with it the power to prescribe the method by which the names

of candidates are entered thereon, so long as the same method is open to all. No man is under legal or moral obligation to attach himself to any political party, nor is any candidate required to obtain a party nomination. The only requirement is, that to obtain a party nomination, such as will entitle him to a place on the official ballot, as a nominee, it must be the method prescribed by law allowing every qualified elector in the party a direct personal expression of choice.

This is no more of a hardship upon a voter in a primary than in a general election. Eligibility to office, and the right to an office, are different matters. To hold an elective office one must conform to all the regulations pertaining to qualification, and also to those fixing the method of being voted for, and must in addition receive the requisite number of votes.

The act does not out-law conventions wholly, but only as to nominations to certain offices named in the first section. As to these, nothing constitutes a nomination, within the definition of the law, except made by primary election, which alone gives the privileges and disabilities imposed by that act. The privilege is that of getting a place on the ticket, as a party nominee. If that privilege is permitted any one, as a party nominee, who is not a nominee, that fraud vitiates the election. A nomination to these offices is a nullity, if made by convention. It leaves the candidates precisely in the attitude of one who had obtained no sort of nomination, with the road open to a place on the ticket, through a petition.

*J. A. P. Campbell,* on same side.

Cases bearing on the question involved: 9 Col., 631; 112 Pa. St., 622; 146 Pa. St., 529; 171 Pa. St., 505; 104 Mich., 474; 111 Mo., 45; 54 N. J. L., 446; 159 Mass., 487; 155 Ill., 553; 10 Mont.; 61; 32 Fla., 545.

Argued orally by *R. H. Thompson* and *T. A. McWillie,* for appellants, and by *E. F. Noel, J. A. P. Campbell* and *Monroe McClurg,* Attorney-General, for appellees.

TERRAL, J., delivered the opinion of the court.

We are requested to pass upon the questions raised in this controversy without regard to the validity of the proceedings. The question made is one of legislative power. We are asked to annul a solemn act of the legislative branch of the government; and yet there is no hint of its impropriety except that arising from the assertion that the methods of getting candidates for public office cannot be restricted, and, especially, that nomination by conventions cannot be interfered with. The insistence is that the legislature cannot restrict the modes of nomination to political offices. Yet this act was passed by both branches of the legislature, and received the approval of the governor. The first hint of its unconstitutionality comes from the Democratic executive committee of Issaquena county, calling for a convention to nominate a candidate of the party for justice of the peace for the fifth district of said county. Under well-settled rules of law, we are not authorized to declare an act of the legislature void unless it be plainly and unmistakably so. This we cannot here affirm. The political franchises of the citizen are given and secured by the constitution of the state, and cannot exist except as therein provided. These rights, though sovereign and fundamental, can have force and operation only through the forms established by law for their expression. The legislature devises the means for this end. In this respect its authority is supreme. It is restrained only by constitutional inhibitions. But there is no constitutional inhibition on this subject. On the contrary, sec. 247 declares that: "The legislature shall enact laws to secure fairness in party primary elections, conventions, or other methods of naming party candidates." By ch. 66, laws 1902, the legislature, attempting to carry out sec. 247 of the constitution, has provided for party nominations for office, to be made only by primary election. In choosing a particular plan—the primary election plan—it has, in effect, excluded the adoption of all other methods, in conformity with the maxim, *"Expressio*

*unius exclusio est alterius."* Undoubtedly, it might have adopted the convention plan, or it might have left open either mode to the choice of the political parties of the state. That the adoption of the primary election plan of nominating candidates by the political parties is within the legislative power and discretion, we have no doubt. It is a proceeding in the line of power heretofore adjudged to belong to the legislative authority. To prescribe a ticket of a certain character is, in a degree and as far as it goes, as restrictive of the voting franchise as is the one here made, that all party nominations shall be made by primary elections. An elector's right to vote is restricted by registration, and other requirements found in the statute on that subject; his right to be elected to office, or rather his pursuit of it, is likewise restricted to the methods provided by law. Prior to the act of 1902 an elector, though eligible to office, could not get his name upon the official ballot except upon certain specified conditions. The act here questioned merely limits the method of getting the name of a candidate upon the official ballot as a party nominee by the result of a primary election. If the legislature may put upon a party candidate for office any restriction whatever, which it has all along heretofore done, why may it not restrict him to the choice of a primary election? If the plan of nomination opened to him be just, honorable, and fair, can he complain that another plan of selection, though it be likewise fair and just, is not open to his choice? Does his eligibility to hold office secure to him a vested right in the choice of the means of his selection? Or may the legislature safeguard his right by reasonable regulations for the common good? Since the opinion of Chief Justice Holt in the great case of *Ashby* v. *White,* 2 Ld. Raym., 938, the right of suffrage (a political, not a natural, right) has been held to rest upon a basis as secure as rights of life, liberty, and property. And while every right, whether conferred by nature or by law, should have, for its security and enforcement, some adequate remedy, has long been settled, yet the legislature

may restrict a litigant to a single proceeding where one full and adequate to his use and enjoyment is left open to his pursuit. In such case, he may not complain that he has only one remedy. And, if the highest property rights may be restricted to only one remedy, why may not political rights be regulated by such legislative restrictions as the public welfare demands? We think they may. Conventions, if necessary for the declaration of party principles, may be called and held, but they cannot be used, under our present law, for the making of party nominations for office. The question here presented is, how may a party nominee get his name on the official ballot? It must be remembered that any qualified elector may have his name placed upon the official ballot, as a candidate for office, provided a request for that purpose be signed by fifteen qualified electors for any beat or municipal office in a town or village of less than three hundred inhabitants, or fifty qualified electors for any other office, if made fifteen or more days before the election. Notice is not taken by the commissioner of the proceedings of a convention; the choice of a convention as such is ignored; but the name of any elector may be placed upon the official ballot upon the petition of fifteen or fifty signers, according to the nature of the office. Electors have an easy method of getting on the ticket; they can demand nothing more. It is party nominees, only, that must have their right to a place on the official ballot determined by a primary election. We are not at liberty to call in question the wisdom of the act, and we are not advised that, in the respect to the provisions of the law before us, it goes beyond the legislative discretion. If the primary election contravenes any provision of the constitution, it must stand annulled; but in the matter before us, we find no error in the judgment of the circuit court.

*Affirmed.*