Hoskins, et al. v. Howard, et al.

May 26, 1952.

No. 38478 (59 So. (2d) 263)

Lester Wills, Bernard Chill, Nelson Taylor, Julia S. Griffin, and James White, for appellants.

484

Weaver E. Gore, Lucien M. Gex, T. N. Gore, Ney M. Gore, Jr., and Perry W. Howard, for appellees.

**Hall, J.**

Appellants on the one hand and appellees on the other constitute two warring groups, each of which claims the right to be registered under the name of the Republican party in this State. Chapter 458, Laws of 1950, provides that the chairman or secretary of the state executive committee of each political party chosen as provided in Section 3107, Code of 1942, as amended by Chapter 308, Laws of 1948, shall register the name of the political party it represents with the Secretary of State within thirty days

after the effective date of the act and that thereafter no political party shall use or register any name or part thereof which has already been registered with the Secretary of State by any other political party.

In 1928 appellants perfected an organization which they named the Independent Republican Party of Mississippi. Appellees prior to that time and since have constituted an organization which they named Republican Party of Mississippi. Each group has regularly held precinct, county and state conventions in accordance with the provisions of Section 5866, Code of 1930, which has been brought forward as Section 3107, Code of 1942, and amended by Chapter 308, Laws of 1948. As a matter of history both groups have from time to time selected candidates for many of the public offices of the State and invariably the group represented by appellants has overwhelmingly polled a greater number of votes than the group represented by appellees. Notwithstanding this, the delegates to the Republican National Convention selected by the appellees have been recognized by that convention as representing the party in Mississippi.

After approval of Chapter 458, Laws of 1950, J. A. White, as the Secretary of the State Executive Committee composed of appellants, filed with the Secretary of State an application for registration of his group under the name of Mississippi Republican Party. A few days later this application was amended and thereupon the party was registered by the Secretary of State. Subsequent thereto C. T. Butler, as Secretary of the State Executive Committee composed of appellees, filed with the Secretary of State an application for registration of his group under the name of Republican Party of Mississippi and this application was denied by the Secretary of State for the reason that he is prohibited by said Chapter 458, Laws of 1950, from registering a second group using the word "Republican."

Appellees then brought suit in the circuit court of Hinds County seeking a writ of mandamus to compel the

Secretary of State to cancel the registration of appellants and to register them as the Republican Party of Mississippi. The pleadings were subsequently amended so as to pray for a writ of certiorari commanding the Secretary of State to bring up the records of his office and for an adjudication by the trial court that because of error apparent upon the face of the record appellants were not entitled to registration. The writ was granted, the records brought up, and upon a hearing the trial court held that appellants were not entitled to registration and were improperly registered by the Secretary of State for the reason that they had changed their name from Independent Republican Party toMississippi Republican Party. The registration by appellants was accordingly cancelled and the appellees were ordered registered as the Republican Party of Mississippi. From that order this appeal is prosecuted.

The records show affirmatively that the organization represented by appellants has been duly organized by precinct meetings, county conventions and state conventions. This does not seem to be seriously questioned by appellees. The learned trial court, however, found error of law upon the face of the record for the reason that the organization represented by appellants changed its name after the happening of the events required to be performed in 1948, and upon this sole ground entered the order from which this appeal is prosecuted. The record shows affirmatively, and it is not questioned, that the appellants in state convention, duly held in accordance with the law of this State, adopted a resolution providing that from and after the presidential election of November 2, 1948, the name of Independent Republican Party of Mississippi be changed to Mississippi Republican Party as the successor to said Independent Republican Party of Mississippi. This resolution did not in any manner change the organization or the membership or the officers and representatives of the group. It changed the name and nothing else, and in so doing it did not appropriate

the word "Republican" for it had already been using that word for more than twenty years. For that period of time confusion had existed in this State in the use of the word "Republican" for the two rival groups had been using it continuously. Similar confusion had arisen in more recent years as to which of two rival groups were entitled to use the word "Democratic" in the designation of their respective organizations and it was apparently for the purpose of bringing order out of chaos that the Legislature adopted the aforesaid Chapter 458, Laws of 1950.

We are of the opinion that the mere change in name of the appellants from Independent Republican Party of Mississippi to that of Mississippi Republican Party without any change whatsoever in the organization is not such a change as would justify a rejection of their application for registration and that the lower court erred in its holding. The 1950 statute provides that when one party registers with the Secretary of State, thereafter no political party shall use or register any name *or part thereof* which has already been registered. If appellants had not adopted a resolution making the aforesaid change in its name and had registered under their former name of Independent Republican Party the appellees would not have been entitled to register as the Republican Party of Mississippi. The change in name by appellants was effected by a resolution duly adopted by its state convention nearly two years before passage of the 1950 act, and such change could not by any stretch of the imagination have been declared for the purpose of coming under the act. The appellants were the first to register under the 1950 act and the fact that they changed the party name in the particulars stated does not bar them from such registration. The Secretary of State under this act has "the power to hear evidence and decide facts. He proceeds upon inquiry and determines facts and in our judgment is an inferior tribunal having quasi-judicial powers." Power v. Robertson, 130 Miss.

188, 223, 93 So. 769, 772. The records brought up under certiorari fully support his action in registering the party represented by appellants as the Mississippi Republican Party. We are of the opinion that the mere change in name by this organization which has used the name "Republican" for more than twenty years and which under the change continues to use that designation is not sufficient to justify the action of the lower court in ordering its registration cancelled and in ordering the organization represented by appellees to be registered as the Republican Party of Mississippi.

In connection with a consideration of the matters presented by this appeal we think that some significance should be given to Section 7 of the 1950 act. By that section it is provided that "The ballot shall contain the names of each candidate for each office and such names shall be listed under the name of the political party such candidate represents", etc. So far as has come to our attention, the first time Mississippi ever had a law requiring the names of candidates to be listed under the name of the political party represented by them was Chapter 312, Laws of 1948, and that statute applied only to candidates for presidential elector. Prior to the passage of the present act the names of all candidates for public office were listed on the official ballot without any designation as to the political party represented by them. Not only illiterate people but even well educated people who desired to vote a straight party ticket were often in doubt as to which of the candidates were selected by the party of their choice. ██ ██ Many, if not most, of the states have long since enacted laws providing that candidates shall be listed on the official ballot under the name of the party which selected them. The enactment of such laws is clearly within the power of the Legislature. As was said by the Supreme Court of Wisconsin nearly fifty years ago in the case of State ex rel. Cook v. Houser, Secretary of State, 122 Wis. 534, 100 N.W. 964, 972, "So the plan for an official ballot, and opportunity for party

representation thereon, are matters of legitimate legislative creation; hence the conditions of party representation upon such ballot are purely within legislative control.'' In this same case it was further said, ''The right to have the names of party nominees put on the official ballot under the party name is a right not existing at common law, but created by the statute.'' 100 N.W. 984.

The 1950 law does not prevent the organization of new parties for in the last paragraph of Section 1 thereof it is expressly provided that registration may be made by any political party hereafter organized. Moreover, it does not prevent any person from becoming a candidate for office for our law still remains in effect that candidates may be selected by political parties and in addition thereto candidates may have their names placed upon the official ballot by petition. Section 3260, Code of 1942. The third sentence in Section 7 of the 1950 act expressly makes provision for the placing of names on the ballot by petition in substantially the same words as Section 3260 of the 1942 Code, and the last sentence in Section 7 of the 1950 act likewise recognizes this method of having names placed on the ballot. Consequently the right of suffrage and the right to become a candidate for any office is not in anywise impaired or abridged by the act.

Chapter 312, Laws of Minnesota of 1901, M.S.A. Sec. 205.72 note, provides as follows: ''A political party which has heretofore or shall hereafter adopt a party name shall alone be entitled to the use of such name for the designation of its candidates on the official ballot, and no candidate nor party subsequently formed, shall be entitled to use or have printed on the official ballot as a party designation, any part of the name of a previously existing political party. And in no case shall the candidate of any political party be entitled to be designated upon the official ballot as the candidate of more than one political party, and shall be designated upon the official party ballot in accordance with the certificate of nomination first filed with the proper officers.''

A dispute arose between two parties and in passing upon this dispute in view of the quoted statute, the Supreme Court of Minnesota, in the case of Davidson v. Hanson, 87 Minn. 211, 211, 220, 91 N. W. 1124, 92 N. W. 93, 96, said: "The party name protection act does not restrict and we doubt if it could be made restrictive of, the right of the citizen to declare his choice of persons through the exercise of the franchise. It applies specifically in terms to the formal use of party names, not of individual preferences; and, while we have reached the conclusion that the use of the word 'Socialist' is an impairment of the rights of the Socialist-Labor party, it is not apparent that such use has been adopted for a fraudulent purpose to deprive another party of material advantages. We are therefore of the opinion that the group or organization which has attempted to select the name 'Socialist' is entitled to personal reognition of its candidates upon the ballot. But we cannot choose for it the name 'Social Democrat,' which it has surrendered. We have, therefore, regarded it as our duty to authorize the placing of the name of its candidate for governor upon the state ballot, leaving the representatives of the party to promote the views he represents in any lawful way they see fit, but without the use of the word 'Socialist,' which, at present, belongs, under the party name act, to the Socialist-Labor party."

The suggestion has been made that the appellees' organization has been recognized by the Republican National Convention in preference to that of appellants. The national convention is a purely political organization and cannot alter the laws of a sovereign state. This was made clear in State ex rel. Cook v. Houser, Secretary of State, supra, wherein the Supreme Court of Wisconsin said: "In view of the foregoing, since the law of this state has provided the conditions under which the party nominees shall go upon the official ballot, how can it be reasonably said that the decision of the national convention of a party can nullify it? The answer seems so plain

as not to warrant this extensive treatment of the matter. Nothing but the great importance of the case could be held to justify it. The moment the conventions performed their work of choosing candidates, the rights of such candidates to have their names placed upon the official ballot became irrevocable privileges, subject only to the legislative condition. That such condition could be displaced by any mere party authority, either within or without the state, dignifying it as paramount to the sovereign will of the people, and so binding its courts and its special tribunal created to decide the matter, does not seem to us to have support in reason or authority.''

Analogous to the holding of the trial judge that the change in name of appellants' organization constituted the creation of a new party which under our law is entitled to no recognition until it organizes by precinct meetings, followed by county conventions and a state-wide convention composed of delegates selected at the county conventions, is the case of Kratzer v. Allen, 10 Colo, App. 492, 50 P. 209. That case dealt with the selection of party emblems or designs to be placed upon official ballots pursuant to a Colorado statute providing: '' 'It shall be lawful to designate the political party, or nominating committee, by which each list of candidates is nominated, by an appropriate emblem or design, such as a flag, eagle, rooster, or other device, as may be set forth in the certificate of nomination; provided, no two sets of nomination shall use or have the same device, and each political party, or nominating committee, shall have the prior right to use the device used by it at the last similar election.' Sess. Laws 1894, p. 62, § 18.'' The National Silver Party selected a candidate for Mayor of the City of Denver and changed the emblem of the party to a photograph of its candidate. In passing upon the contention that the party had no right to change its emblem the Colorado court said: ''We concede that a man may experience a revolution in his opinions, and may so change his attitude politically that his likeness, which at

one time was a fitting device for the party to which he adhered, would afterwards, in the same relative situation, be ridiculous. In such case the party would not be likely to insist on its prior right to the emblem, although its doing so would be merely a matter of taste, for which it could not be called to account by reason of anything contained in the statute. But the statute does not contemplate that a party shall be bound by its first selection. It may choose a new device for each election, the only requirement being that the emblem chosen shall be appropriate, properly certified, and not one upon which another party has a prior claim. The Democratic party may discard its rooster, and the Republican party its eagle, and select something else as representative of its organization, in perfect harmony with the language and purpose of the statute. We do not think the objections to the picture of Mr. McMurray as an emblem of the National Silver party well taken, and we must therefore reverse the judgment.''

Appellees challenge the constitutionality of the 1950 act on numerous grounds. It is contended that it denies appellees the right to peaceably assemble and petition the government as guaranteed by Section 11 of the Mississippi Constitution, that it denies the right of freedom of speech and of the press as guaranteed by Section 13 of the Mississippi Constitution, that it deprives appellees of their liberty and property without due process of law contrary to Section 14 of the Mississippi Constitution, that it violates Section 32 of the Mississippi Constitution in that it destroys the liberty of appellees to organize and associate themselves with others for political purposes and denies them the right to freely exercise their franchise, and that for the stated reasons it violates similar provisions of the Constitution of the United States. We do not agree with these various contentions. The act does not deprive appellees of their right to peaceably assemble and petition the government. It does not deny them freedom of speech and of the press.

It does not deprive them of their liberty or property. It does not destroy their right to organize and associate themselves with others for political purposes, nor does it deny them the right to freely exercise their franchise. The act does not seek to prevent any of these things. Appellees still have their right to peaceably assemble and petition the government; they have their right of freedom of speech and press; they have their right to organize themselves for political purposes; in fact they have the right to continue their present organization and to select candidates for office in the manner provided by law, the only limitation being that they may not use the word "Republican" in the name which they select for their organization since it has already been appropriated and registered by appellants. They are denied no other right by the act except the use of that one word. Certainly there is nothing in the act which denies them the right to freely exercise their right of suffrage.

In the case of State ex rel. Barnett v. Gray, 107 Fla. 73, 144 So. 349, 350, it was held that "The statutes defining political parties under the laws of Florida, and regulating the printing of the names of candidates on the general election ballots, do not violate sections 1 and 6 of the Declaration of Rights or abridge the privileges or immunities of citizens of the United States or disturb the 'domestic tranquility' that is contemplated by the Federal Constitution."

In Field v. Hall, Secretary of State, 201 Ark. 77, 143 S. W. (2d) 567, 570, the Supreme Court of Arkansas upheld the validity of an Act of the Legislature of that state which bars from the ballot un-American parties, and in so doing it said:

"Next and lastly it is argued that even though Act 33 of the acts of 1935 of the General Assembly vests the secretary of state with discretionary authority which may be controlled by courts and even though the record reflects substantial evidence in support of the finding and judgment of the court to the effect

that the Communist party of Arkansas violates the act, yet the act itself is void and unconstitutional because it denies the right of suffrage to a person or group of persons and denies to them their right of freedom of speech and freedom of the press. We cannot agree with appellants that the act is unconstitutional upon either ground urged. The act does not deal with the right of suffrage at all nor attempt to prohibit any political party or any members of a political party from carrying on a program of sedition or treason by radio, speech or press. It deals with political privileges only and not with civil rights. It does not prohibit the Communist party or any other party from advocating the overthrow of government by force or violence nor prohibit them from carrying on a program of sedition or treason by radio, speech or press. It simply denies them the political privilege of having their names placed as candidates upon election ballots to be voted upon at an election in case they advocate or are affiliated with any other party which advocates the overthrow of our government by violence or advocate a program of sedition or treason by radio, speech or press. Neither the federal nor the state constitution in any way deals with or recognizes the nominations of candidates by political parties. Relative to the nomnations of candidates by political parties the following statement is made in 9 R. C. L. 1064: 'This is not, however, a constitutional right, but rather a political privilege, depending upon the will of the people, as expressed to their representatives in the Legislature, or in the absence of positive statutory law, upon the will of party adherence, expressed through conventions, caucuses, or otherwise, in accordance with the rules and regulations of political organizations.'

"We do not think there can be any doubt that the legislatures of the various states have authority to

establish conditions precedent to the existence and operation of political parties.

"We think the act is constitutional because it in no way abridges the civil right of suffrage and the right to the freedom of speech."

A similar statute of Ohio was upheld in the case of State ex rel. Berry v. Hummel, Ohio App., 59 N. E. (2d) 238.

These decisions make clear the distinction between the rights of political parties and the rights of individuals guaranteed under the Constitution.

 ██ The trial judge was under the impression that the plain provisions of Chapter 458, Laws of 1950, were invalid in authorizing the Secretary of State to register the name of the first political party applying for registration. *Prior Tempore, Potior Jure.*— "He who is first in time is preferred in right,"—is a maxim which has long been recognized in the jurisprudence of this country. 50 C. J. 325, and authorities cited is note 51. In law courts it is similar to the equitable maxim "Equity aids the vigilant and not those who slumber on their rights." It is a familiar rule that ignorance of the law excuses no one, or that every person is charged with knowledge of the law. Under this law the appellees were charged with knowledge of the 1950 act. The first quoted Latin maxim finds many applications under our law. A reference to two of these should suffice. One of the oldest under our law is found under our statutes with reference to the recordation of land conveyances. Regardless of the date of conflicting conveyances, the first one filed for recordation is given priority. The most recent statute which recognizes this principle is Senate Bill 149, Laws of 1952, which deals with the registration of brands of cattle and livestock and which gives to the first applicant the right to register his brand notwithstanding the fact that it may have been used for many years by some other person. Under the aforesaid 1950 act the appellants were the first to register their organi-

zation with the Secretary of State, and the appellees did not file their application for registration until nearly three weeks later. We are of the opinion that the Mississippi Republican Party was properly and legally registered and that the appellees were not entitled to registration of their organization under a party name which uses the word "Republican".

For the views herein expressed the judgment of the lower court will be reversed and a judgment will be here entered reinstating the registration of Mississippi Republican Party and cancelling the registration of Republican Party of Mississippi as ordered by the lower court.

Reversed and judgment here.

**McGehee, C. J.,** and **Roberds, Alexander, Holmes, Arrington** and **Ethridge, JJ.,** concur.

**Kyle J.,** took no part.

**Lee, J.,** (dissenting).

Section 247 of the Constitution is in these words: "The legislature shall enact laws to secure fairness in party primary elections, conventions, or other methods of naming party candidates."

Section 5, Article 3 of the Constitution provides as follows: "All political power is vested in, and derived from, the people; all government of right originates with the people, is founded upon their will only, and is instituted solely for the good of the whole."

Section 6, Article 3 of the Constitution provides as follows: "The people of this state have the inherent, sole, and exclusive right to regulate the internal government and police thereof, and to alter and abolish their constitution and form of government whenever they deem it necessary to their safety and happiness; Provided, Such change be not repugnant to the constitution of the United States."

"The political franchises of the citizen are given and secured by the constitution of the state, and cannot exist except as therein provided. These rights, though sovereign and fundamental, can have force and operation only through the forms established by law for their expression. * * * Since the opinion of Chief Justice Holt in the great case of Ashby v. White, 2 Ld. Raym., 938, the right of suffrage (a political, not a natural, right) has been held to rest upon a basis as secure as rights of life, liberty, and property." McInnis v. Thames, 80 Miss. 617, 32 So. 286.

But it is only through political parties that the people assert their will. James Bryce in The American Commonwealth (1889), Vol. 1, page 636, said: "The spirit and force of party has in America been as essential to the action of the machinery of government as steam is to a party association and organization are to the organs of government almost what the motor nerves are to the muscles, sinews, and bones of the human body. They transmit the motive power, they determine the directions in which the organs act. A description of them is therefore a necessary complement to an account of the Constitution and government; for it is into the hands of the parties that the working of the government has fallen."

Clearly, the people have the right to organize and operate parties.

"The people have an inalienable right to organize and operate political parties". Sarlls v. State, ex rel. Trimble, 201 Ind. 88, 166 N. E. 270, 277, 67 A. L. R. 718.

In State of Wisconsin, ex rel. McGrael v. Phelps, 144 Wis. 1, 128 N. W. 1041, 35 L. R. A., N. S., 353, it was held:

"The right of suffrage includes the right to form political parties, and the right of each party to have all the machinery, not reasonably prohibited by law, for making its organization effective as to the policy of its members, by electing officers in harmony therewith.

"Every legislative interference with freedom of voters to form political organizations and act under their respective party names is, at the same time, an interference with the right to vote; so the limit of power as to one is substantially the limit as to the other." See also Britton v. Board of Election Commissioners, 129 Cal. 337, 61 P. 1115, 51 L. R. A. 115.

Our State has expressly authorized and sanctioned the organization and operation of political parties. Section 3256, 3257, Code of 1892; Section 3699, Code of 1906; Section 3107, Code of 1942.

The Republican party in Mississippi has existed in the State for many years. It appears that a schism developed in 1928, and the Independent Republican Party of Mississippi was formed. These organizations were not two factions within one party, but two distinct parties, each of which had *Republican* in its name. Both maintained their organizations and voiced their will through them. In 1948, the Independent party changed its name to Republican Party of Mississippi.

When the Legislature enacted Chapter 458, Laws of 1950, it pronounced the death sentence on one of these parties. They could not both register simultaneously. The one first filing with the Secretary of State would be recognized. The other could not register because its name would coincide with a part of the name already registered. What was certain to happen did happen. In the foot race, appellants got to the Secretary of State first. They were registered. Appellees were refused registration. They were thus put to political death not as a result of a trial, after due process, in which guilt of such offense as would merit their condemnation was established. They were put to death because of their name. They can neither conduct primaries nor enter candidates in any election. Section 3 of the Act. Yet, the only means by which their adherents can give expression to their political beliefs and principles is by entering in elections candidates, who subscribed to such

beliefs and principles. Whatever the number of such adherents—and that fact is immaterial, whether it be great or small—this act deprives them of a valuable right, in direct violation of Section 14, Article 3 of the Constitution, which is as follows: "No person shall be deprived of life, liberty or property except by due process of law."

The irony of this situation is found in the Third Paragraph of Section 8 of the Act which says: "The electorate of Mississippi has a constitutional right of free expression by ballot which has never been denied in this state * * *." Unquestionably the above quotation expresses the political philosophy of our State, and yet the act in which it is found denies to these appellees and their adherents the very constitutional right which the act affirms.

The majority opinion gratuitously suggests that the legislative purpose was to avoid confusion in the use of names, and to bring order out of chaos. But, Section 10 of the Act says that: "The purpose of this act is to provide additional remedies for the protection of the political parties of this state * * *." The Legislature knew that there were established parties then in existence in the State. While the act says it was designed to protect such parties, it, in fact, destroyed this one. Moreover, if confusion was the purpose, the Legislature waited a long time to do anything about it.

There is a wide distinction between our statute and the case involving a Minnesota law cited in the majority opinion in Davidson v. Hanson, 87 Minn. 211, 220, 91 N. W. 1124, 92 N. W. 93. The prohibition in that law was against the subsequent formation of a party. "* * * no candidate nor party *subsequently formed* shall be entitled to use or print on the official ballot as a party designation, any part of the name of a previously existing political party." In the case before us, the appellees did not form their party after the passage of our

act. The party was then formed, and had been formed for many years.

I think that the act, insofar as it excludes an established party because of its name, is contrary to our whole philosophy of political freedom, and in violation of fundamental and constitutional rights. To that extent, I think the act is unconstitutional.

## ON MOTION FOR APPOINTMENT
### IN THE PLACE OF THE DISQUALIFIED JUDGE.

June 9, 1952 (59 So. (2d) 271)

**Roberds, J.**

On May 26, 1952, this Court handed down an opinion in this case reversing the lower court and rendering judgment here for appellants. The Court then consisted of nine judges. The decision was en banc. Eight of the judges took part. Seven concurred and Mr. Justice Lee dissented. Mr. Justice Kyle, having been Attorney General when that office gave an opinion pertaining to the question litigated, recused himself.

Appellees now, by motion, ask the Court to certify to the Governor the disqualification of Mr. Justice Kyle and request the Governor to appoint another to serve in his place in passing upon a suggestion of error appellees propose to file in this case.

Section 1653, Miss. Code 1942, reads, in part, as follows: "If a judge of the Supreme Court be unable or disqualified to preside at any term of the court, or in any cause, the facts shall be certified to the governor by any two of the judges of the Supreme Court and the governor shall commission a like person to preside in the cause or during the disability as the case may be. In case the appointment be for the trial of a particular case or cases the proceedings shall be as provided in the last section; but if the appointment be for holding a term of court, the proceedings shall be as if the special judge were the regular judge of the court."

That section does not require appointment of another judge under the facts of this case. Judge Kyle was not the presiding judge when the case was argued or decided. Should it come to pass that he is the presiding judge when the suggestion of error is passed upon the question can be dealt with as then presented.

By this we do not mean to hold that where essential to a decision another judge should not be appointed, for that would give a narrow construction to the statute and limit the appointment to a substitute only for a presiding judge. The vote of Judge Kyle, had he served, or that of his substitute had one been appointed, could not have affected the result in this case. Seven concurred; only five were needed. The Constitution of this State at this time, and when the case was decided, provides for nine judges, ''any five of whom when convened shall constitute a quorum''. See Laws 1950, c. 592. Should it develop in future deliberations that the vote of Judge Kyle, or his substitute, would affect the result, we will exercise such power as we have to see that the opinion of a majority of the court prevails.

Appellees insist that we hear oral arguments on their contention that no less than nine judges can decide this case. There are two reasons why the request should be denied. The first is that we have ·today decided the question adversely to the contention. Carney v. Anderson, Miss., 59 So. (2d) 262. The second is that under our practice and procedure May 31, 1952, was the last day for hearing argument at this term before adjournment of the Court, and this motion was filed June 3, 1952.

Motion overruled.

All Justices concur except **Kyle, J.**, who took no part.