MYERS, J.,
for the Court.
FACTS
¶ 1. David and Joan Vincent were granted a divorce by the Chancery Court of DeSoto County on February 24, 1997. The decree awarded both parents joint legal and physical custody of their three minor children. In November 1997, David and Joan agreed to alternate terms for child visitation, as permitted in the decree. These alternate terms gave David custody of the children on alternate weekends and up to two additional nights each week. David asserts that the parties later modified this schedule to allow him to have physical custody of the children from Thursday at 5:00 p.m. to the following Monday when he would deliver the children to school or back to their mother’s home. David further asserts that he and Joan agreed to suspend child support payments since each of them had the children for relatively equal amounts of time. Both David and Joan agree that David was to provide medical insurance for the chil *622 dren.[1]
¶ 2. In August 2000, Joan filed a petition for contempt seeking to compel David to pay three years of back child support. On August 31, a Rule 81 summons was issued informing David of the date and time of the hearing on the contempt motion. David made an appearance at the scheduled time, and the case was continued until October 2, at which time an administrative order was entered scheduling the matter for trial on November 15. On November 15, Chancellor Dennis Baker transferred the case back to Chancellor Percy Lyneh-ard, Jr., who had been the original chancellor who granted the parties’ divorce. During all of these proceedings, David appeared pro se.
¶ 3. On January 31, 2001, Joan’s attorney mailed David a letter along with an agreed order proposing a trial date of February 28. David did not respond to this letter, nor did he return the agreed order, or in any way contact Joan’s counsel concerning this correspondence. On February 21, Joan filed a motion for trial date setting noticing David to appear before the Chancery Court of DeSoto County on February 26, 2001, at 9:00 a.m. David claims to have never received this notice.
¶ 4. On February 26, the chancellor ordered a trial date of March 29. David claims to have not received any notice of this date, and did not appear for the trial. At the trial, Joan obtained a judgment for contempt and modification awarding her $21,560 in past due child support, sole legal and physical custody of the parties’ three minor daughters, and attorney’s fees of $6,080. David, again acting pro se, filed a motion for a new trial or to reopen the hearing for additional testimony on April 16. After filing this motion, David was able to retain counsel who now represents him on this appeal. Chancellor Lynchard denied this motion on August 9. David now appeals, stating the issues as:
1. WHETHER THE CHANCELLOR DENIED DAVID’S DUE PROCESS RIGHTS BY HEARING THE CASE WHEN DAVID DID NOT RECEIVE NOTICE OF THE TRIAL DATE.
2. WHETHER THE CHANCELLOR ERRED WHEN HE AWARDED JOAN PAST DUE CHILD SUPPORT AFTER JOAN TESTIFIED THAT THE GIRLS SPENT THURSDAY THROUGH MONDAY WITH DAVID.
3. WHETHER THE CHANCELLOR ERRED WHEN HE AWARDED ATTORNEY’S FEES TO JOAN VINCENT WHEN SHE HAD ABILITY TO PAY. DID THE AWARD UNFAIRLY PUNISH DAVID FOR HIS FAILURE TO APPEAR AND DAVID COULD NOT QUESTION THE REASONABLENESS OF THE FEES AWARDED?
DISCUSSION
I. David’s Due Process Claim
¶ 5. David first claims that since he did not receive notice of the order assigning a trial date, he did not receive procedural due process. David cites Mississippi Rule of Civil Procedure 40 for support of this argument, claiming the clerk of the trial court should have given him at least three days’ notice of the trial date. However, Mississippi Rule of Civil Procedure 81(d) controls where matters in either Rule 81(d)(1) or 81(d)(2) conflict with other provisions of the rules. Rule 81(d)(2) states that actions for modification or enforcement of child support and child custody actions are triable seven days after *623 completion of service of process (or thirty days after publication where service is by publication). “Other means of initiating an action or initially setting a matter on a docket are inapplicable in these actions.” Caples v. Caples, 686 So.2d 1071, 1074 (Miss.1996).
¶ 6. Further, Rule 81(d)(5) states, “[i]f such action or matter is not heard on the day set for hearing, it may by order signed on that day be continued to a later day for hearing without additional summons on the defendant or respondent.” (emphasis added). This language would suggest that no further notice is required once a defendant has been served with a Rule 81 summons.
¶ 7. In the instant case, Joan served David with a Rule 81 summons and David appeared at the ordered date and time. On that day, Chancellor Baker, to whom the case was assigned, continued the matter until October 2, 2000. David appeared at the October 2 hearing. At that hearing, an initial trial date of November 15 was set.
¶ 8. On November 15, Chancellor Baker heard brief arguments. He then decided to reassign the ease to Chancellor Lynch-ard, the chancellor who had originally granted the divorce. The reassignment order did not set a trial date, but directed Joan’s attorney to contact Chancellor Lynchard’s court administrator to set a date. Thus, Chancellor Baker complied with the text of Rule 81(d)(5); an order signed on that day continued the matter until a later day (to be set by Chancellor Lynchard).
¶ 9. The dissent relies on Caples to suggest that David did not receive sufficient notice. However, there are two key distinctions between Capíes and the case before us. First, the Caples’s divorce was granted by a Texas court. Gwendolyn Ca-pies started the Mississippi action by filing a complaint for modification of child support in the Chancery Court of the First Judicial District of Hinds County. Caples, 686 So.2d at 1071-72. Edgar Capíes had never appeared before a Mississippi court, nor had he availed himself of the jurisdiction of the court until the modification hearing. Unlike Edgar, David’s divorce was issued by the same court that held the hearing on Joan’s motion. It is well-settled Mississippi law that once a chancery court has granted a divorce, it has continuing jurisdiction over the parties in matters concerning the divorce. Stowers v. Humphrey, 576 So.2d 138, 141 (Miss.1991); Bradshaw v. Bradshaw, 418 So.2d 64, 65 (Miss.1982); Reichert v. Reichert, 807 So.2d 1282, 1287(¶ 16) (Miss.Ct.App.2002) (citing Powell v. Powell, 644 So.2d 269, 274 n. 4 (Miss.1994)). David was subject to the chancery court’s continuing jurisdiction.
¶ 10. Second, the summons in Capíes appears to be a Rule 4 summons. The supreme court’s opinion reads, “While Edgar was served a summons, it did not comply with 81(d) M.R.C.P. because it did not indicate the time and place the complaint would be heard.... ” Caples, 686 So.2d at 1074; see M.R.C.P. 81(d). The document which gave David notice of the hearing was a Rule 81 summons. It listed the time and date for David to appear. David did appear—twice—and he even filed a counterclaim in the same court.
¶ 11. David admits that he received the February 21, 2001 motion for a trial date. Yet, from that time on, he seems to have stopped attending motion hearings. It is a maxim of equity that “[ejquity aids the vigilant and not those who slumber on their rights.” Last Will & Testament of Winding v. Estate of Winding, 783 So.2d 707, 711(¶ 15) (Miss.2001) (quoting In re Estate of Davis, 510 So.2d *624 798, 800 (Miss.1987)); Hoskins v. Howard, 214 Miss. 481, 497, 59 So.2d 263, 269 (1952); cf. Collier v. King, 251 Miss. 607, 611, 170 So.2d 632, 634 (1965) (“[E]quity will not, on the mere ground of silence, relieve one who is perfectly acquainted with his rights, or has the means of becoming so, by examining the land records or otherwise.”). Granted, David appeared pro se, but even so, he has the same obligations and duties as if he appeared with counsel and must bear the risk if he chooses to not attend hearings. Dethlefs v. Beau Maison Dev. Corp., 511 So.2d 112, 118 (Miss.1987) (citing Public Interest Bounty Hunters v. Board of Governors, 548 F.Supp. 157 (D.Ga.1982); Catanzaro v. Masco Corp., 423 F.Supp. 415 (D.Del.1976); Sanghi v. Sanghi, 759 So.2d 1250, 1252(¶ 8) (Miss.Ct.App.2000)). David was served with proper notice of the original November 2000 trial date. He was present when the case was transferred to Chancellor Lynchard. David was not a disinterested spectator, but an active participant in the proceedings. He had every opportunity to check with the chancery clerk’s office and Joan’s attorney regarding the case’s status. His failure to do so is not relieved simply because he chose to represent himself. Therefore, David did not suffer a violation of procedural due process.
II. Past Due Child Support
¶ 12. David next contends that he and Joan had agreed that no child support would be due since the children would visit with him Thursday through Monday. This argument is without merit.
¶ 13. The standard of review in child support cases is that a chancellor’s ruling will remain undisturbed unless there is a showing of manifest error. Roberts v. Brown, 805 So.2d 649, 652(¶ 12) (Miss.Ct.App.2002). The Mississippi Supreme Court and this Court have repeatedly held that child support vests in the child as it accrues. Once vested, payments cannot be modified or forgiven by the courts. Houck v. Houck, 812 So.2d 1139, 1143(¶ 11) (Miss.Ct.App.2002) (citing Mississippi State Dept. of Human Servs. v. St. Peter, 708 So.2d 83, 84 (Miss.1998); Tanner v. Roland, 598 So.2d 783, 786 (Miss.1992); Thurman v. Thurman, 559 So.2d 1014, 1016-17 (Miss.1990)). Further, each past due payment has the force of a judgment against the supporting parent. Id. (citing Tanner, 598 So.2d at 786; Cunliffe v. Swartzfager, 437 So.2d 43, 45-46 (Miss.1983)).
¶ 14. The closest support for David’s position comes from Mosley v. Mosley, 784 So.2d 901 (Miss.2001). There, the supreme court held that the supporting father was due a refund of child support payments from the mother for the period of time the daughter lived with him. Id. at 905(¶ 11). Mosley is distinguishable from the instant case since Roshanda Mosley was actually living with her father — and not visiting him — while she finished her senior year of high school. Mosley, 784 So.2d at 905 (¶ 13).
¶ 15. Even if David and Joan agreed for their daughters to visit with David for approximately half of each week, they were still visiting. The chancellor’s decision does not amount to an error, let alone manifest error. The child support payments were still payable each month to Joan for the daughters’ benefit, and the judgment for $21,560 in past due child support is affirmed.
III. Attorney’s Fees
¶ 16. David contends the chancellor erred by awarding attorney’s fees to Joan. Since she had the ability to pay her own fees, David insists the chancellor awarded fees solely as punishment for him not ap *625 pearing at the trial. This argument can be disposed of in short order.
¶ 17. The basis of this appeal is a ruling from a contempt hearing that David failed to attend. “A chancellor is justified in awarding attorney’s fees that are incurred in pursuing a contempt motion.” Elliott v. Rogers, 775 So.2d 1285, 1290(¶ 25) (Miss.Ct.App.2000). David was under court order in his original divorce to pay child support. Examining the facts in a light most favorable to David, and assuming he and Joan agreed to waive child support payments, he still violated the chancellor’s order in the original decree. He can therefore be held in contempt, and Joan’s attorney’s fees may be awarded to her. Id. (citing Varner v. Varner, 666 So.2d 493, 498 (Miss.1995)). The chancellor’s judgment of $6,080 in attorney’s fees due Joan is affirmed.
¶ 18. THE JUDGMENT OF THE CHANCERY COURT OF DESOTO COUNTY IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
THOMAS, LEE, AND CHANDLER JJ., CONCUR. McMILLIN, C.J., CONCURS IN RESULT ONLY. IRVING, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING AND SOUTHWICK, P.JJ. AND BRIDGES, J. GRIFFIS, J., NOT PARTICIPATING.

. There is disagreement between David and Joan whether David was to provide medical insurance, or merely reimburse Joan for the expense of the children's medical insurance.