# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2018-CA-00182-SCT

*GREEN HILLS DEVELOPMENT COMPANY, LLC*

*v.*

*THE SECRETARY OF STATE OF THE STATE OF MISSISSIPPI, DELBERT HOSEMANN, IN HIS OFFICIAL CAPACITY, UMB BANK, N.A., STONEBRIDGE HOLDINGS I, LLC, STONEBRIDGE HOLDINGS II, LLC, STONEBRIDGE HOLDINGS III, LLC, RANKIN COUNTY TAX COLLECTOR, JUDY FORTENBERRY, IN HER OFFICIAL CAPACITY, RANKIN COUNTY TAX ASSESSOR, JOHN A. SULLIVAN, IN HIS OFFICIAL CAPACITY, THE RANKIN COUNTY BOARD OF SUPERVISORS, RANKIN COUNTY CHANCERY CLERK, LARRY SWALES, IN HIS OFFICIAL CAPACITY, KENNETH PAUL BRADLEY, JR.*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/05/2017 |
| TRIAL JUDGE: | HON. JOHN C. McLAURIN, JR. |
| TRIAL COURT ATTORNEYS: | MICHAEL A. HEILMAN |
| | JASON ERIC FORTENBERRY |
| | ALICIA NICOLE NETTERVILLE |
| | ERIN DIANE SALTAFORMAGGIO |
| | CRAIG LAWSON SLAY |
| | MICHAEL O. GWIN |
| | ROBERT NEILL BRYANT |
| | EDWARD TAYLOR POLK |
| | JOHN WILLIAM NISBETT |
| | WILLIAM C. SMITH, III |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | MICHAEL A. HEILMAN |
| | JOHN WILLIAM NISBETT |
| | EDWARD TAYLOR POLK |

ATTORNEYS FOR APPELLEES:        MICHAEL O. GWIN
                                JASON ERIC FORTENBERRY
                                CRAIG LAWSON SLAY
                                KENNETH PAUL BRADLEY, JR. (PRO SE)
                                ALICIA NICOLE NETTERVILLE

NATURE OF THE CASE:             CIVIL - OTHER
DISPOSITION:                    AFFIRMED IN PART; REVERSED AND
                                REMANDED IN PART - 07/18/2019

MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE KING, P.J., MAXWELL AND GRIFFIS, JJ.**

**MAXWELL, JUSTICE, FOR THE COURT:**

¶1.     Green Hills Development Company, LLC, forfeited property to the State for failure to pay taxes.  Five years later, the State sold the property, following the statutory procedure under which the Secretary of State accepts written applications to purchase and, if an application is approved, issues a land patent.  After learning of the sale, Green Hills sued the Secretary of State and the purchasers to have the land patents set aside.

¶2.     Green Hills argued it had been entitled to notice—which was never given—of the purchasers' pending applications.  Had it been properly notified, Green Hills asserts it would have filed its own application.  And its application would have received priority based on Green Hills' status as former owner.  Green Hills also sued one of the purchasers for interfering with its rights as developer to enforce protective covenants and maintain common areas within the development.

¶3. The Defendants successfully moved for summary judgment on Green Hills' notice-based claims.[1] The trial court ruled that the notice provision on which Green Hills relied was no longer in effect when the purchasers submitted their applications. And under the current administrative rules, Green Hills undisputedly received all required notice. The court further ruled the priority status for former owners' applications was contingent on Green Hills' filing an application, which Green Hills never did. After review, we affirm this part of the trial court's judgment. The record confirms the material facts are not in dispute—Green Hills received all required notice and never filed an application to purchase, despite multiple opportunities. So the Defendants are entitled to a judgment as a matter of law on Green Hills' notice-based claims.

¶4. But the trial court's ruling went beyond dismissing the notice-based claims. The court also ruled that Green Hills lacked standing to challenge the validity of the land patents and that the land patents were "in all respects . . . valid and proper." We reverse these two rulings.

¶5. Still pending before the trial court are Green Hills' claims based on the development's protective covenants and common areas. As developer, Green Hills has colorable interest in whether the purchasers hold valid land patents. Green Hills has also suffered an adverse effect from the purchasers' countersuit to declare the protective covenants unenforceable and to divest Green Hills of its interest in the common areas. Thus, Green Hills has standing to challenge the land patents' validity.

---

[1] Though only a partial grant of summary judgment, the trial court certified its judgment as final and appealable. *See* Miss. R. Civ. P. 54(b).

¶6.     Part of that challenge is Green Hills' assertion that one of the purchasers was statutorily prohibited from owning the tax-forfeited property, rendering its land patents void.[2] In response to the Defendants' motion for summary judgment, Green Hills moved for a continuance to conduct discovery on this issue. Given the lack of record evidence and the potential impact of this issue on the remaining claims, the trial court's summary-judgment ruling that the land patents are "in *all* respects . . . valid and proper" was premature.

¶7.     Thus, we reverse the parts of the judgment finding that Green Hills lacked standing and that the land patents are categorically valid. We remand the issue of whether the land patents are void by operation of statute to the trial court to be considered with the remaining claims.

## Background Facts and Procedural History

### I.     Loss of Subject Property

¶8.     Green Hills' loss of ownership of its property to the State is not in dispute in this case.

¶9.     Green Hills was the developer and significant owner of a multi-use development in Rankin County called Stonebridge. To finance the development, the Stonebridge Public Improvement District (SPID) was formed in 2007.[3] The SPID board issued bonds through a trust indenture in September 2007. The board then levied special assessments on the property within the SPID to repay the bonds. These assessments were certified to the Rankin

---

[2] *See* Miss. Code Ann. § 29-1-75 (Supp. 2018).

[3] A public-improvement district is a special district within one or two counties specially organized for the delivery of public-improvement services. Miss. Code Ann. § 19-31-5(e) (Rev. 2012). *See* Miss. Code Ann. § 19-31-1 to 19-31-51 (Rev. 2012) (governing public-improvement districts).

County Tax Assessor and Tax Collector to be collected and enforced "in the same manner and at the same time as ad valorem taxes." Miss. Code Ann. § 19-31-33(3) (Rev. 2012).

¶10.    Undisputably, Green Hills did not pay the special assessments levied on 106 parcels in Stonebridge (the Subject Property). Although Green Hills had two years to pay the back taxes and redeem the Subject Property, it did not. On November 1, 2011, the Secretary of State sent Green Hills a letter informing it that some of the parcels now belonged to the State. The Secretary of State's letter included an application to purchase the Subject Property and a notification that it "may have an applicant who is interested in purchasing the property." So if the Secretary of State did not hear from Green Hills within fifteen days, it would assume Green Hills was no longer interested. On October 24, 2013, the Secretary of State sent identically worded notice letters concerning the remaining parcels, which had also become property of the State.

## II.    Purchase of Subject Property

¶11.    Green Hills' counsel timely called the Secretary of State's office to express his client's continued interest in the Subject Property. But counsel also expressed concern that his client would have to repurchase all 106 parcels and pay all the levied special assessments, including penalties and interest. This phone call was the first of a four-year, back-and-forth conversation between Green Hills and the Secretary of State's office about purchasing the property. Importantly, Green Hills never submitted an application to purchase the property, despite the Secretary of State's written reminders that it had "yet to receive applications to

5

purchase from Green Hills" but was "continuing to accept applications on the property until a suitable purchaser is found."[4]

¶12.    Instead, in January 2015, the Secretary of State received Kenneth Bradley's applications to purchase two parcels.    Three months later, three limited liability companies—Stonebridge Holdings I, LLC; Stonebridge Holdings II, LLC; and Stonebridge Holdings III, LLC (collectively, the Stonebridge Companies)—submitted applications to purchase the remaining parcels.  The sole member of the Stonebridge Companies is UMB Bank, N.A., an out-of-state banking corporation, which is the successor trustee for the SPID bondholders.

¶13.    In June 2016, the Secretary of State issued land patents to Bradley for two of the parcels.  That same month, the Secretary of State issued land patents to the Stonebridge Companies for the remaining parcels.  A month before issuing the Stonebridge Companies' land patents, the Secretary of State—along with the Stonebridge Companies, UMB Bank, the Rankin County Tax Assessor, and the Rankin County Tax Collector—entered a forbearance agreement.  This agreement allowed the Stonebridge Companies to purchase the property without satisfying the entirety of the unpaid special assessments.

### III.    Green Hills' Complaint

¶14.    When Green Hills learned of not only the land patents but also the forebearance agreement, it sued the Secretary of State, UMB Bank, the Stonebridge Companies, the

---

[4] As late as October 2015, Green Hills' counsel sent the Secretary of State a letter acknowledging that, while it remained "very interested" in repurchasing the property, "no formal offer has been made at this point."

Rankin County Tax Collector, the Rankin County Tax Assessor, the Rankin County Chancery Clerk, and Bradley. Central to its complaint was Green Hills' contention that, as the original owner of the Subject Property, it was entitled to notice that Bradley and the Stonebridge Companies had filed applications to purchase. Had it been properly notified, Green Hills contended, it would have filed an application as well. And, by rule, its application would have enjoyed priority status. Further, Green Hills complained the Secretary of State gave the Stonebridge Companies preferential treatment in the application process—namely by entering the forbearance agreement. Green Hills also alleged UMB Bank and the Stonebridge companies had breached and/or interfered with the protective covenants binding the Subject Property, which Green Hills claimed it had the right to enforce.[5]

¶15. The Stonebridge Companies countered with claims of their own, based on Green Hills' attempted enforcement of the protective covenants and control over common areas of the development.[6]

_____

[5] In all, Green Hills asserted eight causes of action. Against the Secretary of State, Green Hills brought causes of action for: (1) violation of the Mississippi Administrative Code's land-patent process, (2) violation of procedural due process, (3) violation of substantive due process, (4) violation of equal protection; and (5) review of a final agency decision. Against UMB Bank and the Stonebridge Companies, Green Hills brought causes of action for: (6) breach of the contract and interference with contract rights and (7) interference with prospective business relations. Against all Defendants, Green Hills sought: (8) a declaratory judgment that (a) the land patents issued to the Stonebridge Companies and Bradley were void and (b) the protective covenants were fully enforceable.

[6] The Stonebridge Companies sought: (1) a declaratory judgment that the protective covenants were void, (2) an injunction against Green Hills from enacting, enforcing, or amending the protective covenants, (3) the transfer of title of common area property from Green Hills to the homeowners' association, (4) the transfer of all rights, duties, powers, and

## IV. Summary Judgment

¶16. Green Hills had filed its complaint in the Chancery Court of Hinds County, the county in which the Secretary of State's office is located. But the Secretary of State successfully moved for transfer to the chancery court of Rankin County, where the Subject Property is located.

¶17. Soon after the transfer to Rankin County, the Secretary of State—joined by the other Defendants—moved for summary judgment. The Defendants argued Green Hills' notice argument was based on an outdated regulation. Under current regulations, the Secretary of State had provided all required notice. The Defendants also argued Green Hills lacked standing to challenge the validity of the land patents because it no longer owned the Subject Property.

¶18. Green Hills countered with a Rule 56(f) motion for continuance to conduct discovery.[7] *See* Miss. R. Civ. P. 56(f). In its rebuttal, Green Hills for the first time invoked the statutory prohibition against a banking corporation's direct *or indirect* purchase of tax-forfeited land for which it does not hold a mortgage or deed of trust. *See* Miss. Code Ann. § 29-1-75

---

other management and/or governing authority vested in Green Hills or others under the protective covenants to the Stonebridge Companies or, alternatively, to the homeowners' association, and (5) a judgment against Green Hills for slander of title, breach of the covenant of good faith and fair dealing, and tortious interference with business relations and/or property interest.

[7] Green Hills also filed its own motion for partial summary judgment, seeking a declaratory judgment that the land patents and forbearance agreement are void.

8

(Supp. 2018).[8]  Green Hills asserted the need for discovery as to UMB Bank's statutory authority to indirectly purchase the land through the Stonebridge Companies.  But at the summary judgment hearing, the trial court refused to consider Green Hills' argument that UMB Bank's status as a banking corporation rendered the land sale void under Section 29-1-75, concluding, "[t]hat's not what we're here about today."

¶19.    The court instead focused on the Defendants' argument that Green Hills could not establish the two assertions undergirding its claims—(1) the Secretary of State failed to give Green Hills notice of Bradley's and the Stonebridge Companies' applications, and (2) the Secretary of State failed to acknowledge Green Hills' priority status in the application process.  The court agreed with the Defendants.  It ruled that Green Hills had "received all legally required notice."  Further, because Green Hills did not submit an application to purchase the Subject Property, it "at no time has possessed any priority, preference or purchase rights."  Consequently, "Green Hills ha[d] established no right, claim or standing to challenge the validity of the land patents issued for the Subject Property."

¶20.    Despite finding Green Hills lacked standing to challenge the validity of the land patents, the court deemed all the land patents issued for the Subject Property "in all respects [were] valid and proper."

¶21.    The court's judgment dismissed all claims against the Secretary of State,  Bradley, the Rankin County Tax Assessor, the Rankin County Tax Collector, and the Rankin County

---

[8] Section 29-1-75 was to "stand repealed on July 1, 2019."  Miss. Code Ann. § 29-1-75(3) (Supp. 2018).  But effective July 1, 2019, the Legislature amended Section 29-1-75(3) to extend the date of repealer to July 1, 2022. *See* 2019 Miss. Laws H.B. 807.

Chancery Clerk. But the court excepted from dismissal Green Hills' claims specifically aimed at UMB Bank and the Stonebridge Companies relating to the protective covenants. So the grant of summary judgment was only partial. However, the trial judge found there was no just reason for delay and expressly directed the entry of a final judgment. *See* Miss. R. Civ. P. 54(b).

## VII. Appeal

¶22. Green Hills timely appealed. Green Hills argues:

(1) it has standing to challenge the land patents' validity;

(2) the trial court erred in finding the land patents valid instead of void based on evidence in the record;

(3) the trial court erred in finding the land patents were valid;

(4) the Secretary of State was obligated to follow pre-2015 administrative rules governing notice;

(5) alternatively, the Secretary of State failed to follow current administrative rules governing notice;

(6) the trial court erred by not granting Green Hills' Rule 56(f) motion for a continuance to conduct discovery; and

(7) the Hinds County Chancery Court erred in transferring the case to the Rankin County Chancery Court.

¶23. This Court "review[s] the court's grant of summary judgment de novo, viewing the evidence in the light most favorable to the party against whom the summary-judgment motion has been made." *Hyde v. Martin*, 264 So. 3d 730, 734 (Miss. 2019). Likewise, we review the jurisdictional question of standing de novo. *Hotboxxx, LLC v. City of Gulfport*, 154 So. 3d 21, 27 (Miss. 2015) (citing *City of Madison v. Bryan*, 763 So. 2d 162, 166 (Miss.

10

2000); ***In re City of Biloxi***, 113 So. 3d 565, 570 (Miss. 2013)). But we "review a trial court's grant or denial of a motion for change of venue for an abuse of discretion," unless questions of law arise, such as the interpretation of the general venue statute. ***Laurel Ford Lincoln-Mercury, Inc. v. Blakeney***, 81 So. 3d 1123, 1125 (Miss. 2012) (citing ***Hedgepeth v. Johnson***, 975 So. 2d 235, 237 (Miss. 2008)).

## Discussion

### I. Notice

¶24. We begin with the issue of notice. The trial court ruled, as a matter of undisputed fact and law, Green Hills received all legally required notice related to the Subject Property and had no "priority, preference, or purchase right." We agree.

¶25. Green Hills asserts that, as the original owner of the Subject Property, it was entitled to notice of the Stonebridge Companies' and Bradley's land-patent applications. Had it been given proper notice, Green Hills contends, it would have filed an application, and such application would have enjoyed priority status. But the first assertion is not supported by fact or law. Instead, the undisputed record shows Green Hills was given all required notice. So the second contention likewise fails. The undisputed record shows—regardless of Green Hills' intention—Green Hills never applied to purchase the Subject Property. Thus, no right to priority application status arose.

### A. *1 Mississippi Administrative Code Part 11, Rule 1.6: 2011 Version*

¶26. Green Hills insists the 2011 version of 1 Mississippi Administrative Code Part 11, Rule 1.6 (adopted November 30, 2011), Westlaw, controlled. An application to purchase

11

State land triggers a thirty-day waiting period. And under the 2011 version of Rule 1.6, during the thirty-day waiting period, the Secretary of State had to "make reasonable efforts to locate and notify record owners at the time the property was forfeited to the state that application to purchase the property has been made." 1 Miss. Admin. Code Pt. 11, R. 1.6C (2011). Green Hills concedes this version was replaced effective January 3, 2015. And the 2015 version does not require the Secretary of State to notify the prior owner that an application to purchase has been submitted. *See* 1 Miss. Admin. Code Pt. 11, R. 1.6 (amended Jan. 3, 2015), Westlaw. But Green Hills argues the Secretary of State was still obligated to follow the 2011 version of the rule and provide Green Hills notice of Bradley's and the Stonebridge Companies' applications.

¶27. Green Hills first reasons the old rule controlled because the Subject Property vested in the State before January 3, 2015. But there is nothing in the old rule's language that ties notice to when the property was forfeited to the State. Instead, under the old rule, the time to locate and notify the prior owner was "[d]uring the thirty (30) day waiting period." *See* 1 Miss. Admin. Pt. 11, R. 1.6C (2011). And this waiting period did not begin until an application to purchase had been filed. 1 Miss. Admin. Pt. 11, R. 1.6A (2011). In this case, no application was filed until *after* January 3, 2015. At that point, the application-notice requirement was no longer in effect. *See* 1 Miss. Admin. Code Pt. 11, R. 1.6 (2015).

¶28. Green Hills next makes something akin to a detrimental-reliance or estoppel argument. It claims the rule change should not apply because it did not know the rule had changed.[9] But

---

[9] Green Hills actually goes farther than that, insinuating the Secretary of State's office intentionally misled it into believing the old rules were still in effect to keep Green

12

Green Hills cites no law in support of binding a State agency to an outdated regulation simply because an adversely affected member of the public did not know the regulation had changed. Instead, "[i]t is a familiar rule that ignorance of the law excuses no one, or that every person is charged with knowledge of the law." *Hoskins v. Howard*, 214 Miss. 481, 497, 59 So. 2d 263, 269 (1952). Here, Green Hills' unfamiliarity with the rule change—and its assumption that it would be notified if another applied to purchase the Subject Property—does not excuse it from not submitting an application during the years-long span the Subject Property was available to purchase.

### B. 1 Mississippi Administrative Code Part 11, Rule 1.6: 2015 Version

¶29. Green Hills alternatively argues, if the 2015 version of the rule controls, the Secretary of State still failed to comply. In so arguing, Green Hills does not contend it did not receive notice or that the notice lacked the required information. Nor can it. The record clearly shows the Secretary of State notified Green Hills that the Subject Property had forfeited to the State, that the Subject Property could be purchased from the State, how to contact the Secretary of State to arrange for purchase of the Subject Property, and that the failure to

---

Hills from repurchasing the Subject Property. But this argument is belied by the record, which shows the Secretary of State's office reminded Green Hills it had yet to file an application to purchase and invited the developer to do so. As late as November 4, 2015—after it had received Bradley's and the Stonebridge Companies' applications but before it had issued land patents—the Secretary of State informed Green Hills' counsel, "While you indicate in this most recent letter Green Hills is interested in acquiring the property, we have yet to receive applications to purchase from Green Hills. *We are continuing to accept applications on the property until a suitable purchaser is found*." (Emphasis added.)

13

contact the Secretary of State within fifteen days could result in the Subject Property being sold to another application. *See* 1 Miss. Admin. Code Pt. 11, R. 1.6C (2015).[10]

¶30.    Rather, Green Hills challenges *when* the Secretary of State gave this notice. Essentially, Green Hills argues this notice was inadequate because it was given four years *too early*. Green Hills argues that—even under the new rule—the Secretary of State must give notice during the thirty-day waiting period for an application to purchase. In other words, Green Hills claims notice still must be given based on a pending application to purchase. But the language of the new rule does not support this interpretation. Instead, the updated rule directs the Secretary of State to give notice to an owner that its property has forfeited to the State "[a]fter a Parcel is certified to the State[.]" *Id.* As explained by Rule 1.2, a parcel is certified to the State when it is struck from the local tax rolls for failure to pay taxes. 1 Miss. Admin. Code Pt. 11, R. 1.2 (amended Jan. 3, 2015), Westlaw. That is what the Secretary of State did here. After the Subject Property was certified to the State, in November 2011 and October 2013, respectively, the Secretary of State provided Green Hills notice its property now belonged to the State and instructed Green Hills to contact the

---

[10] This administrative rule directs:

After a Parcel is certified to the State, the Secretary of State will send by first class U. S. Mail a notification to the original assessed owner at his address as shown on the List of Land Certified to the State by the Chancery Clerk. The notification will include the parcel number and property description as shown on said List of Land Certified to the State and will state in substance that (1) the Parcel has forfeited to the State of Mississippi, (2) the property can be purchase from the State, (3) the address, telephone number and e-mail for contacting the Office of the Secretary of State to arrange for purchase of the Parcel, and (4) the failure to contact the Office of the Secretary of State within fifteen (15) days may result in the property being sold to another applicant.

14

Secretary of State if interested in purchasing it. So Green Hills' lack-of-required-notice claim fails.

### C. Failure to File an Application

¶31. The long and short of it is that, over the course of four years, Green Hills never submitted an application as directed by the Secretary of State's multiple written communications[11] and statutory law. *See* Miss. Code Ann. § 29-1-37(1) (Rev. 2010) ("[A]ny person desiring to purchase any state forfeited tax land shall make application in writing to the Secretary of State . . . .").[12]

---

[11] We note the following correspondence from the Secretary of State to Green Hills:

• **November 1, 2011 Letter:** "If you . . . are interested in obtaining title to the property, please complete the enclosed application and return it with the appropriate filing fee."

 • **October 14, 2013 Letter:** "A letter was sent from our office to Green Hills Development, Company, LLC on November 1, 2011 advising that the property was now owned by the State and could be repurchased upon application. No application to repurchase the property was ever filed on behalf of your client. We will continue to accept applications on the property until a suitable purchaser is found."

• **October 23, 2013 Letter:** "If you . . . are interested in obtaining title to the property, please complete the enclosed application and return it with the appropriate filing fee."

• **November 4, 2015 Letter:** "While you indicate in this most recent letter Green Hills is interested in acquiring the property, we have yet to receive applications to purchase from Green Hills. We are continuing to accept applications on the property until a suitable purchaser is found. . . . Effective November 1, 2015, all applications to purchase Tax Forfeited property must be made online at www.sos.ms.gov."

[12] The written-application requirement has two exceptions, neither of which applies here. Miss. Code Ann. § 29-1-37(2), (3) (Supp. 2018).

¶32.    While Green Hills claims it was entitled to priority purchaser status based on its former ownership, the administrative rule on which Green Hills relies is clear that an original owner's priority purchase right only arises "[*i*]*f* an application to purchase is received from the original assessed owner." 1 Miss. Admin. Code Pt. 11, R. 1.6D (2015) (emphasis added). Admittedly, Green Hills never submitted an application.[13]  Therefore, the trial court did not err in ruling Green Hills had no "priority, preference or purchase right as to the Subject Property." Nor did the trial court err in dismissing on summary judgment Green Hills' claims based on alleged rights to notice and preference in the application process—*i.e.*, violation of the "patent process," violation of substantive due process, violation of procedural due process, violation of equal protection, declaratory judgment that the land patents are void for failure to provide notice, and review of a final agency decision.

## II.    Standing

¶33.    The trial court's ruling, however, went beyond finding Green Hills failed to establish triable issues on the above claims.  The chancellor also held Green Hills lacked standing to challenge the validity of the land patents issued for the Subject Property.  To the extent the chancellor's standing ruling went beyond Green Hills' ability to challenge the Secretary of State's handling of the patent application process, we find that ruling was error.

¶34.    While Mississippi's standing rules are quite liberal, a party must "assert a colorable interest in the subject matter of the litigation or experience an adverse effect from the conduct of the defendant, or as otherwise provided by law." ***City of Picayune v. S. Reg'l***

---

[13] *See supra* note 4.

16

*Corp.*, 916 So. 2d 510, 525 (Miss. 2005) (quoting *State v. Quitman Cty.*, 807 So. 2d 401 (Miss. 2001)). Moreover, "the adverse effect experienced must be different from the adverse effect experienced by the general public." *Hall v. City of Ridgeland*, 37 So. 3d 25, 34 (Miss. 2010) (citing *Burgess v. City of Gulfport*, 814 So. 2d 149, 153 (Miss. 2002)).

¶35. Green Hills asserts no present ownership interest in the Subject Property.[14] Green Hills concedes it forfeited its ownership in the Subject Property to the State when it failed to redeem it. And the Legislature directs that "[t]he courts shall not recognize claims by the original owner, his heirs or assigns after unredeemed lands are sold to the state for taxes and received by the Secretary of State's office . . . ." Miss. Code. Ann. § 29-1-21 (Rev. 2010). Nor can Green Hills assert any interest in the application process because it never filed an application. *See Davis v. City of Jackson*, 240 So. 3d 381, 384 (Miss. 2018) (holding that the *potential* to have one's application denied does not constitute a colorable interest creating standing to challenge a municipality's application requirements). For this same reason, Green Hills cannot claim any adverse effect based on how the Secretary of State conducted the application process for the Subject Property that differs from the Secretary of State's treatment of any other member of the general public who did not file an application. So, in that sense, the trial court did not err. Green Hills has no standing to challenge the Secretary of State's handling of the application process.

---

[14] In its response to the Secretary of State's motion to transfer venue, Green Hills expressly stated to the trial court that "Green Hills is not the owner of land at issue in this case and has asserted no rights as a landowner."

¶36. That said, the chancellor did err to the extent he broadly ruled Green Hills lacked *any* standing to challenge the validity of the land patents.

¶37. Still pending before the trial court are Green Hills' claims against the Stonebridge Companies based on the protective covenants. So are the Stonebridge Companies' counterclaims to strip Green Hills of its rights to enforce the covenants and its title to the common-area property. If, as Green Hills contends, the land patents issued to the Stonebridge Companies are void by operation of Mississippi Code Section 29-1-75—which prohibits a banking corporation that did not hold a mortgage or deed of trust on the property at the time it was forfeited to the State from directly or indirectly purchasing or becoming the owner of public land—then the Stonebridge Companies do not own the Subject Property. And they can neither prevent Green Hills from enforcing the protective covenants nor divest Green Hills of title to common-area property within the Stonebridge development.

¶38. In this respect, Green Hills certainly has a colorable interest in whether the Stonebridge Companies in fact own the Subject Property subject to the protective covenants. Similarly, Green Hills has experienced an adverse effect by the Stonebridge Companies' conduct—namely, their stymieing Green Hills' attempts to enforce the protective covenants and maintain the common areas in the development. So Green Hills has standing to assert that the Stonebridge Companies lack ownership rights to the Subject Property because their land patents are void by statutory operation. *Cf. SASS Muni-V, LLC v. DeSoto Cty.*, 170 So. 3d 441, 449 (Miss. 2015) (holding that, under Mississippi's liberal standing requirements, a tax-sale purchaser had standing to challenge the validity of a tax sale based on

18

noncompliance with tax-sale statutes). We therefore reverse the trial court's judgment to the extent it held that Green Hills lacked standing to challenge the land patents' validity.

### III. Land Patents' Validity

¶39. The chancellor also erred by broadly ruling, on summary judgment, that the land patents for the Subject Property were "*in all respects . . .* valid and proper." (Emphasis added.) To the extent this ruling covers Green Hills' claim that the land patents are void under Section 29-1-75, this ruling is premature.

¶40. Admittedly, Green Hills did not plead Section 29-1-75 as a grounds on which it was seeking to declare the land patents void. *See **Dynasteel Corp. v. Aztec Indus., Inc.***, 611 So. 2d 977, 984 (Miss. 1992) (holding that Rule 8 of the Mississippi Rules of Civil Procedure requires a pleading to "provide sufficient notice to the defendant of the claims and grounds upon which relief which is sought"). While UMB Bank and the Stonebridge Companies contend Green Hills has waived this issue, we disagree. Section 29-1-75 expressly states that "every patent issued in contravention hereof *shall be void*"—not merely voidable, but *void ab intio*. (Emphasis added.) So this issue cannot be waived. *See **Osborne v. Neblett***, 65 So. 3d 311, 313 (Miss. Ct. App. 2011) (holding that failure to raise the issue of a foreclosure sale's statutory noncompliance was "irrelevant because the sale is a nullity and unenforceable under the law"). *See also **Huber v. Freret***, 138 Miss. 238, 103 So. 3, 5 (1925) (holding that, when a State agency lacked statutory authority to issue a land patent, the patent is void and may be attacked collaterally).

19

¶41. Green Hills had also specifically requested a continuance to conduct discovery on, among other things, whether UMB Bank's status as a banking corporation rendered the patents issued to the Stonebridge Companies void. Under the circumstances, the chancellor abused his discretion by denying Green Hills' Rule 56(f) motion. *See Stanley v. Scott Petroleum Corp.*, 184 So. 3d 940, 943 (Miss. 2016) (holding the trial court abused its discretion by denying a motion to continue because plaintiffs had "complied with Rule 56(f) by presenting specific facts indicating why additional time for discovery would assist them in opposing the motion for summary judgment"). This is especially so because the chancellor acknowledged the claims and counterclaims related to the protective covenants were not ripe for summary judgment.

¶42. Whether UMB Bank, as trustee for the bondholders, could indirectly purchase the Subject Property through the Stonebridge Companies is a material disputed fact. Therefore, we reverse the grant of summary judgment in favor of the Secretary of State, UMB Bank, and the Stonebridge Companies on the issue of the validity of the land patents and remand this issue to the chancellor to be considered with the other remaining claims.

¶43. But we affirm the grant of summary judgment in favor of Bradley and the ruling the patents issued to him are in all respects valid and proper. Green Hills' only challenge to the validity of Bradley's patents was that Green Hills was not provided notice of Bradley's application. As Green Hills was not entitled to such notice, there is no material factual dispute regarding the validity of Bradley's patents and Bradley is entitled to a judgment as a matter of law.

### III. Venue

¶44. Finally, contrary to Green Hills' assertion, the Chancery Court of Hinds County did not abuse its discretion in granting the Secretary of State's motion to transfer venue to the Chancery Court of Rankin County. Suits to confirm title to real property must be brought in the county where the land is located. Miss. Code Ann. § 11-5-1 (Rev. 2014). And the Subject Property is located in Rankin County.

¶45. Green Hills had argued its lawsuit was not about the Subject Property's title but rather the Secretary of State's conduct, so venue was proper in Hinds County because the Secretary of State is located there. But according to Green Hills' complaint, the consequences of the Secretary of State's conduct is that the land patents had to be set aside. So this case has always been about title. Thus, venue lies in Rankin County.[15]

### Conclusion

¶46. In conclusion, we affirm the grant of summary judgment on Green Hills' claims of (1) violation of the Mississippi Administrative Code's land-patent process, (2) violation of procedural due process, (3) violation of substantive due process, (4) violation of equal protection, (5) declaratory judgment that the land patents are void for failure to provide notice, and (6) review of a final agency decision.

¶47. But we reverse the parts of the judgment finding Green Hills lacked standing to challenge the validity of the land patents and that the land patents issued by the Secretary of

---

[15] After Green Hills filed suit, the Legislature amended Mississippi Code Section 29-1-87(2) (Supp. 2018), effective March 5, 2018, to ensure that "the question of failure of title" of a State issued land patent "can only be determined in a suit filed in the county in which the land is situated."

State to UMB Bank through the Stonebridge Companies are in all respects valid and proper. We remand the issue of whether the Stonebridge Companies' patents are void by statute to the trial court to consider with the pending claims. Because the validity of the land patents issued to the Stonebridge Companies is still at issue, the Secretary of State shall remain a party in this case.

¶48. Finally, we discern no viable remaining claim against the Rankin County Tax Collector, the Rankin County Tax Assessor, or the Rankin County Chancery Clerk. Nor does it appear Green Hills has appealed their dismissal from this suit. So as with Bradley, we affirm the final judgment dismissing them as defendants.

¶49. **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., COLEMAN, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.**