# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-SA-01186-COA

**TOOLPUSHERS SUPPLY CO.**                                                          **APPELLANT**

**v.**

**MISSISSIPPI DEPARTMENT OF REVENUE**                                    **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 09/23/2021 |
| TRIAL JUDGE: | HON. CRYSTAL WISE MARTIN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | C. TED SANDERSON JR. |
| ATTORNEYS FOR APPELLEE: | JOHN STEWART STRINGER BRIDGETTE TRENETTE THOMAS |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED - 06/06/2023 |
| MOTION FOR REHEARING FILED: | |

**BEFORE BARNES, C.J., LAWRENCE AND EMFINGER, JJ.**

**EMFINGER, J., FOR THE COURT:**

¶1.     The Mississippi Department of Revenue (MDOR) audited Toolpushers Supply Co. (Toolpushers) and made an assessment against Toolpushers for unpaid retail sales tax, penalties, and interest. This assessment was affirmed on appeal to MDOR's Board of Review (BOR). The assessment was again affirmed on appeal to the Mississippi Board of Tax Appeals (BTA). Toolpushers then filed a petition appealing the BTA's decision to the Chancery Court of the First Judicial District of Hinds County, Mississippi, pursuant to Mississippi Code Annotated section 27-77-7 (Rev. 2017). Both parties filed motions for summary judgment. The chancellor granted MDOR's motion for summary judgment to affirm the assessment and denied Toolpushers' motion for summary judgment, which sought

reversal of the assessment. Aggrieved by that decision, Toolpushers appealed.

## FACTS AND PROCEDURAL HISTORY

¶2.    Toolpushers is a Wyoming corporation registered to do business in Mississippi and has a retail location in Laurel, Mississippi. Toolpushers sells "various items of property to purchasers in the oil and gas industry" including "casing, tubing, drill pipe, pumping units, valves and wellheads, sucker rods, tanks, fiberglass and poly pipe, as well as other parts and miscellaneous items related to energy exploration and production."

¶3.    The audit of Toolpushers covered the period from April 1, 2013, to June 30, 2016. MDOR found:

> After reviewing the taxpayer's applicable records for sales tax, it was determined that the taxpayer has an additional $124,728.00 (including interest and penalties) owed. The taxpayer had failed to charge and remit sales tax on some of its sales. The taxpayer considered some of its sales exempt when they were actually not exempt. They made sales to oilfield service providers that would be consumables or for their own use and subject to sales tax. This caused our audit assessment.

MDOR issued a notice of assessment to Toolpushers by a letter dated November 22, 2016.[1]

---

[1] Pursuant to Mississippi Code Annotated section 27-65-37(1) (Supp. 2015), this assessment was "prima facie correct," and once in chancery court, pursuant to Mississippi Rule of Evidence 301, the burden then rested with Toolpushers to rebut this presumption, as will be discussed later in this opinion. Further, concerning this statutory presumption of correctness, this Court explained in *BBM Ventures LLC v. Frierson*, 346 So. 3d 498, 504-05 (¶19) (Miss. Ct. App. 2022):

> As this Court recently recognized, "[t]he auditor is not required to use 'the best information available' to make an assessment; 'in order for the assessments to be prima facie correct, the auditor must make them from any information available.'" *Jackson Land Food Mart Inc. v. Frierson*, 314 So. 3d 146, 151 (¶28) (Miss. Ct. App. 2021) (quoting *United Roofing & Constr. of MS Inc. v. Miss. Dep't of Revenue*, 319 So. 3d 1164, 1173 (¶25) (Miss. Ct. App. 2020)). "Once the auditor's assessment is made and the presumption of

Toolpushers appealed the auditor's assessment to the BOR, which found that

> the plain language of the statute requires the taxpayer to sell to a reseller who will not consume the property in order to meet the definition of a wholesale sale. In this case, the invoices and other documentation provided by the taxpayer indicates that supplies and equipment were sold to oilfield service companies. Regardless of whether these customers hold a sales tax permit, the evidence clearly shows that they are using and consuming rather than reselling the products purchased.[2]

¶4. Toolpushers appealed the BOR's order to the BTA, which conducted a hearing on August 16, 2017. Before the BTA, Toolpushers again argued that the sales at issue were "wholesale sales" and not "retail sales" subject to the 7% retail sales tax. In its order dated February 14, 2018, the BTA affirmed the decision of the BOR and stated:

> Based on the evidence presented to this Board,[3] we find that Toolpushers failed to fulfill its obligation under the wholesale sales statute because it did not meet the first requirement of Miss. Code Ann. § 27-65-5(1); specifically, Toolpushers did not exercise the requisite "good faith" in making the determination at the time of the sale that the items at issue it sold to its customers were to a retailer regularly selling or renting that property.

¶5. On April 16, 2018, Toolpushers filed a petition in Hinds County Chancery Court appealing the BTA's order. The petition requested reversal of the BTA's order "due to the

---

prima facie correctness attaches, '***the taxpayer bears the burden of proof showing that a genuine dispute exists regarding the correctness of the assessment***.'" *Id.*

(Emphasis added).

[2] Pursuant to Mississippi Code Annotated section 27-77-5(3), "[t]he hearing before the Board of Review shall be informal and no official transcript will be made of the hearing."

[3] Pursuant to Mississippi Code Annotated section 27-77-5(6), at the hearing before the BTA "the rules of evidence shall be relaxed," and "no official transcript shall be made of this hearing before the Board of Tax Appeals."

erroneous imposition of the 'regular retail sales tax' under Mississippi Code Annotated section 27-65-17"; a declaration that the "application of the 'wholesale sale' statute by MDOR and BTA is an unconstitutional exercise of legislative authority by a state administrative agency and a violation of Toolpushers' due process and equal protection rights"; and an order "enjoin[ing] MDOR from [acting on] the assessment and collection of the 'regular retail sales tax' against Toolpushers."

¶6.     MDOR responded to the petition on May 16, 2018, in the form of a general denial. The parties filed cross-motions for summary judgment, which were heard on September 24, 2019. The chancellor advised the parties that "the Court will take this matter under advisement and will issue a ruling," and they would "receive notice when the ruling has been issued."

¶7.     On September 23, 2021, the chancery court's "Final Order on Cross Motions for Summary Judgment" was entered. The chancellor found that Toolpushers had failed to meet its burden to show that it was entitled to the relief requested and that "MDOR was entitled to a judgment as a matter of law." The chancery court granted MDOR's motion for summary judgment and denied Toolpushers' motion for summary judgment. Toolpushers now brings the instant appeal.

**STANDARD OF REVIEW**

¶8.     In *Mississippi Department of Revenue v. Hotel and Restaurant Supply*, 192 So. 3d 942, 945 (¶5) (Miss. 2016), the supreme court stated the standard of review for cases such as this:

4

Mississippi Code Section 27-77-7(5) provides the process and standard of review for chancery court review of MDOR and MBTA decisions, and issues related to such are questions of law. *See Equifax* [*Inc. v. Miss. Dep't of Revenue*], 125 So. 3d [36,] 41 (¶7) [(Miss. 2013)]. As customary, questions of law are reviewed de novo. *Id*. (citation omitted). Further, "[a] de novo standard is applied when the Court reviews a chancery court's grant or denial of summary judgment." *Miss. Dep't of Revenue v. Isle of Capri Casinos, Inc.*, 131 So. 3d 1192, 1194 (¶5) (Miss. 2014) (citing *In re Guardianship of Duckett*, 991 So. 2d 1165, 1173 (¶15) (Miss. 2008)).

**ANALYSIS**

¶9. Pursuant to section 27-77-7(1),[4] Toolpushers filed its petition in the chancery court appealing the order of the BTA affirming the assessment made against Toolpushers for unpaid retail sales tax, penalties, and interest. However, unlike most appeals, section 27-77-7(5) requires a summons to be issued and served upon MDOR. The statute further requires the MDOR to file an answer or otherwise respond to the petition within thirty days of service of the summons. This appeal is not to be decided based on a record from the proceedings before the BTA because, as noted *supra* n. 3, there is no record of those proceedings. Instead, section 27-77-7(5) provides that "[t]he chancery court shall try the case de novo and conduct a full evidentiary judicial hearing on all factual and legal issues raised by the taxpayer which address the substantive or procedural propriety of the actions of the Department of Revenue being appealed." This statute also provides that "[b]ased on the evidence presented at trial, the chancery court shall determine whether the party bringing the appeal has proven by a preponderance of the evidence or a higher standard if required by the issues raised, that he is entitled to any or all of the relief he has requested." Miss. Code Ann. § 27-77-7(5).

---

[4] The section is titled "Judicial Review."

¶10.    The Mississippi Supreme Court has given the bench and bar guidance as to how to

apply this somewhat unusual statutory appeal process. In *Equifax*, 125 So. 3d at 41 (¶¶7-8),

the supreme court explained:

> The proper standard of review and burden of proof for an appeal to chancery
> court of a judgment of the Commission are questions of law dictated by
> Mississippi statute. Miss. Code Ann. § 27-7-7(4) (2005) (amended 2009). This
> Court reviews questions of law de novo. *Hankins v. Md. Cas. Co./Zurich Am.
> Ins. Co.*, 101 So. 3d 645, 652 (Miss. 2012) (citation omitted).
>
> **All agree that the applicable standard of review and burden of proof in
> chancery court for judicial review of a Commission decision are found in
> Mississippi Code Section 27-77-7(4),[5] but much disagreement arises over
> the practical application of that language**. The relevant portion of Section
> 27-77-7(4) reads as follows:
>
> > the chancery court shall give deference to the decision and
> > interpretation of law and regulations by the commission as it
> > does with the decisions and interpretation of any administrative
> > agency,[6] but it shall *try the case de novo and conduct a full
> > evidentiary judicial hearing on the issues raised*. Based on the
> > evidence presented at the hearing, the chancery court *shall
> > determine whether the taxpayer has proven, by a
> > preponderance of the evidence* or a higher standard if required
> > by the issues raised, *that he is entitled to any or all of the relief
> > he has requested*.
>
> Miss. Code Ann. § 27-77-7(4) (2005) (amended 2009) (emphasis added). We
> hold that, under this language, the chancery court must hold a judicial hearing
> to determine whether the taxpayer challenging the Commission decision can
> prove entitlement to any or all of the relief requested by a preponderance of the
> evidence (footnote omitted). In this case, the evidence to be considered by the

---

[5] After amendments to this statute, the language at issue is now found in section 27-77-7(5).

[6] This provision requiring deference to be given to the commission's interpretation of law and regulations has been removed by subsequent amendments and further declared unconstitutional in *HWCC-Tunica Inc. v. Mississippi Department of Revenue*, 296 So. 3d 668 (Miss. 2020).

6

chancellor was the record from the Commission, including the agreed-upon facts. ***As in other appeals of administrative-agency decisions, to be entitled to reversal of the agency decision, a petitioner must raise and prove one or more of the following: the agency's decision was unsupported by substantial evidence, the agency's decision was arbitrary and capricious, the agency's decision was beyond the power of the administrative agency to make, and/or the agency's decision violated the complaining party's statutory or constitutional right***. *Buffington v. Miss. State Tax Comm'n*, 43 So. 3d 450, 453-54 (Miss. 2010). ***The court does not adjudicate the wisdom/sageness of the agency's decision, but rather is limited to examining the legality of the decision***. To resolve any confusion surrounding Section 27-77-7(4), we address the pertinent provisions.

(Emphasis added).

¶11. Further, the court addressed the "confusion" surrounding the use of the phrase "try the case de novo":

Perhaps the confusion surrounding Section 27-77-7(4) stems from the statute's instruction to the chancery court to "try the case de novo." Black's Law Dictionary defines "de novo" as "anew." Black's Law Dictionary 500 (9th ed. 2009). "Anew" means "[a] second time as a new trial or action, over again, afresh, once more." I The Oxford English Dictionary 457 (2d ed. 1989). "A trial de novo, within the common acceptation of that term . . . means that the case shall be tried the same as if it had not been tried before, and the court conducting such a trial may substitute its own findings and judgment for those of the inferior tribunal from which the appeal is taken." *California Co. v. State Oil and Gas Bd.*, 200 Miss. 824, 838-39, 27 So. 2d 542, 544 (1946) (emphasis added). The hearing in chancery court is the first hearing conducted by a judicial tribunal to test the legality of the decision. The proceedings before the Commission are informal, nonjudicial proceedings that are neither conducted under oath nor preserved in the record for appeal. The chancery-court proceedings mark the first time a taxpayer may judicially challenge the legality of the Commission's final decision. In the absence of a prior proceeding, no trial anew can occur. Thus, the instruction to "try the case de novo" is misdirected. Section 27-77-7(4) provides a judicial forum to try anew (or for the first time) the legal issues raised by the taxpayer in chancery court. ***Its limited purpose is only to examine whether the Commission's decision was supported by substantial evidence, was not arbitrary and capricious, was within the Commission's power to make, and did not violate the taxpayer's statutory or constitutional rights.***

*Equifax*, 125 So. 3d at 42 (¶12) (emphasis added).

¶12.   Concerning the burden of proof at the de novo trial in chancery court, the supreme court stated:

> Finally, Section 27-77-7(4) establishes the burden of proof and upon whom the burden rests. "Based on the evidence presented at the hearing, the chancery court shall determine whether the taxpayer has proven, by a preponderance of the evidence or a higher standard if required by the issues raised, that he is entitled to any or all of the relief he has requested." Miss. Code Ann. § 27-77-7(4) (2005) . . . . This sentence stands for the simple proposition that, in a taxpayer's action in chancery court appealing a final judgment of the Commission, as in all other judicial proceedings, ***the party petitioning the court for relief bears the burden of proving its claims by a preponderance of the evidence or a higher standard, if required by the issues raised***.

*Id*. at 42-43 (¶13) (emphasis added).

¶13.   In the present case, after receiving proof from both parties, the BTA found "that the sales at issue made by Toolpushers were not wholesale sales" and affirmed MDOR's assessment against Toolpushers. Since Toolpushers sought relief from the BTA order, based upon section 27-77-7(5), in chancery court Toolpushers had the burden to prove, by a preponderance of the evidence, that the BTA's decision (i.e., the sales in question were not "wholesale sales") was not supported by substantial evidence, was arbitrary and capricious, was beyond the BTA's power, or violated Toolpushers' statutory or constitutional rights. In response to MDOR's motion for summary judgment and in support of its own motion for summary judgment, Toolpushers had the burden to produce sufficient "summary judgment" proof to create a genuine issue of material fact as to at least one of the *Buffington* factors noted above. *See Mixon v. Berry*, 351 So. 3d 983, 987 (¶8) (Miss. Ct. App. 2022); *Miss. Dep't of Revenue v. Comcast of Georgia/Virginia Inc.*, 300 So. 3d 532, 536 (¶15) (Miss.

8

2020).[7]

¶14.    The state retail sales tax is imposed by section 27-65-17, which states in part:

> Except as otherwise provided in this section, upon every person engaging or continuing within this state in the business of selling any tangible personal property whatsoever there is hereby levied, assessed and shall be collected a tax equal to seven percent (7%) of the gross proceeds of the *retail sales* of the business.

Miss. Code Ann. § 27-65-17(1)(a) (Rev. 2022) (emphasis added). Pursuant to section 27-65-17(1)(a) and Mississippi Code Annotated section 27-65-31 (Rev. 2022), Toolpushers is required to collect the 7% **retail** sales tax from the purchaser of its "tangible personal property" at the time the sales price is collected. In fact, this statute makes it "unlawful" for the seller to fail to add to the sales price "the amount of tax due by him on each sale." "Retail sales" are defined by Mississippi Code Annotated section 27-65-7 (Rev. 2022):

> "Retail sales" shall mean and include all sales of tangible personal property **except those defined herein as wholesale** and those made to a wholesaler, jobber, manufacturer or custom processor for resale or for further processing.

(Emphasis added).

¶15.    Toolpushers does not deny that it failed to collect and remit the 7% retail sales tax for the sales at issue. Instead, Toolpushers argues that such sales were not "retail sales" but were "wholesale sales" that were excepted from the definition of "retail sales."

---

[7] While Toolpushers argues that MDOR had the burden to prove that the sales at issue were not "wholesale sales," the statute and cases clearly show that Toolpushers would have had the burden at trial to prove to the court that Toolpushers was entitled to relief. Since it would have had the burden of proof at a "trial de novo," it had the burdens of production and persuasion in support of its own motion for summary judgment and the burden of producing sufficient evidence to preclude summary judgment in response to MDOR's motion for summary judgment. *See also Karpinsky v. Am. Nat. Ins. Co.*, 109 So. 3d 84, 88-89 (¶¶10-11) (Miss. 2013).

¶16.    Section 27-65-5(1) defines "wholesale sales":

> A sale of tangible personal property taxable under Section 27-65-17 for resale in the regular line of business, when made in good faith to a retailer regularly selling or renting that property and when the dealer is licensed under Section 27-65-27 of this chapter if located in this state.

It is the interpretation and application of this statutory definition of "wholesale sales" that is at the heart of this appeal. The fact that each of the sales was made by a purchaser who was licensed pursuant to section 27-65-27 is uncontested. However, both the BTA and the chancery court found that Toolpushers did not have a good faith basis to believe that the sales were made to a purchaser who was a retailer and who regularly sold or rented the property being purchased from Toolpushers.[8]

¶17.    The parties attached documents to their pleadings and to their motions for summary judgment. From a review of all these documents in the record, particularly Toolpushers' responses to interrogatories and the affidavit of its chief accountant, it is clear that Toolpushers relied heavily, if not exclusively, upon the purchasers' presentation of their permits to do business issued pursuant to section 27-65-27 to determine that it would not charge such purchasers with the 7% retail sales tax on any of the purchases. This reliance is somewhat misplaced.

_____

[8] Section 27-65-5 also provides: "Wholesale sale" shall not include a transaction whereby property is delivered to, and collection for the transaction is made from, *a person that will consume the property rather than resell it even though the billing is to a retailer*. (Emphasis added). The BTA's order noted, "For example, Toolpushers had personal knowledge that some of its customers were regularly engaged in providing *services*. Because many service providers are not in the business of selling tangible personal property, Toolpushers should have made an effort to determine whether the customer intended to resale the purchased property."

¶18.    Section 27-65-27 provides in part:

> (1) Any person who engages, or who intends to engage, in any business or activity which will subject such person to a privilege tax imposed by this chapter, or which falls within the scope of [Mississippi Code Annotated] Section 31-3-16 or [Mississippi Code Annotated] Section 73-59-18, shall apply to the commissioner for a permit to engage in and to conduct any business or activity upon the condition that he shall pay the tax accruing to the State of Mississippi under the provisions of this chapter, and shall keep adequate records of such business or activity as required by this chapter . . . .
>
> (2) Upon receipt of the permit, the applicant shall be duly licensed under this chapter to engage in and conduct the business or activity. The permit shall continue in force so long as the person to whom it is issued shall continue in the same business at the same location, unless revoked by the commissioner for cause.

In *Fidelity & Guaranty Ins. Co. v. Blount*, 63 So. 3d 453, 463 (¶38) (Miss. 2011), the supreme court held that "[a] taxpayer is required to obtain a sales tax permit under Mississippi Code Section 27-65-27 before engaging in business in this state." The holder of the permit is required to collect and remit taxes to the State and keep records as required by Mississippi's sales tax law. The permit grants its holder the "privilege" of doing business in this state in exchange for the requirement to collect and remit retail sales tax to the State. The "dominant purpose" of the Mississippi sales tax law is the collection of revenue. *See Jackson Land Food Mart Inc. v. Frierson*, 314 So. 3d 146, 151 (¶24) (Miss. Ct. App. 2021). Neither section 27-65-27 nor the permit itself excuses or exempts any entity from the payment of the 7% retail sales tax on its purchases.

¶19.    The evidence shows that the form and language of the permits have changed several times over the years. The bulk of the language on the permits tracks the requirements set out in section 27-65-27. The final sentences of the permits, however, refer to the provision for

11

wholesale purchases set out in section 27-65-5(1). Those sentences state, in differing ways, that retail businesses may purchase items for resale in their regular line of business without paying the 7% retail sales tax. It is clear, however, that section 27-65-5(1) does not exempt retail businesses from paying retail sales tax on **all** their purchases—only those items purchased for resale. For example, purchases of office furniture, cash registers, cleaning equipment, and material used to clean the business itself are not exempt. The **possession of the permit itself** does not mean that the business is excused from paying retail sales tax. **It is the purpose for which each item is purchased that provides the exception**. Regardless of how other states may handle the collection of retail sales tax, Toolpushers is charged with knowing Mississippi law in this regard. In *Green Hills Development Co. v. Secretary of State*, 275 So. 3d 1077, 1085-86 (¶28) (Miss. 2019), the supreme court repeated:

> "[I]t is a familiar rule that ignorance of the law excuses no one, or that every person is charged with knowledge of the law." *Hoskins v. Howard*, 214 Miss. 481, 497, 59 So. 2d 263, 269 (1952).

¶20.    In any event, Toolpushers' business practice, according to the accountant's affidavit and Toolpushers' answers to interrogatories, was to accept the presentation of a permit as a representation by the purchaser that it did not have to pay any retail sales tax on its purchases from Toolpushers. The permit would then be sent to Toolpushers' office in Wyoming and would be entered into its accounting and point-of-sale system. Thereafter, anytime the holder of that permit made a purchase, the system would not charge retail sales tax for that purchase. In fact, the Mississippi location for Toolpushers could not override the system to charge retail sales tax on any purchase by the permit holder once it was entered into the system. For the

12

sales at issue, there was no evidence that the purchasers were ever asked any questions about the nature of their business or the purpose for which each specific purchase was being made, either before or after having presented the permit.

¶21.   In its affidavit and answers to interrogatories, Toolpushers repeatedly takes the position that the permits are "tax exemption certificates" and that "the permits authorize the holder to purchase materials or services exempt from tax." Toolpushers insists that it does not "blindly or solely rely on permits or certificates in our good faith reporting of sales tax to Mississippi or any other states in which we operate." However, its responses to interrogatories showed differently. For example:

> **Interrogatory No. 13**: When you sold tangible personal property to a customer that presented a valid sales tax permit and you did not charge sales tax on that transaction based upon your belief that the transaction constituted a wholesale sale, please describe in detail what steps you took to determine whether your customer that you sold the property to regularly resold or rented those types of products.
>
> **Response**: Not required by statute or case law and would be practically impossible to accomplish for a company like Toolpushers with thousands of purchases each year in multiple cities and states.
>
> **Interrogatory No. 14**: When you sold tangible personal property to a customer that presented a valid sales tax permit and you did not charge sales tax on that transaction based upon your belief that the transaction constituted a wholesale sale, please describe in detail what steps you took to determine that your customer did not intend to consume the property as opposed to reselling or renting the property.
>
> **Response**: See Response No. 13.

Toolpushers maintains that the sales at issue were wholesale sales because each sale was made to a permit holder. Toolpushers takes the position that the presentation of the permit

13

by a purchaser constitutes an "implied representation" that the purchaser is entitled to make purchases without paying retail sales tax. Toolpushers maintains that it is not required to do anything more to have a good faith belief that the purchases are being made by a retailer who intends to resell or rent the items purchased in the regular line of their business. We disagree.

¶22. Since we can find no case, and the parties cite no case, that interprets the requirements of section 27-65-5(1), this is a case of first impression.[9] *In Diversicare of Meridian LLC v. Shelton*, 334 So. 3d 487, 493 (¶15) (Miss. Ct. App. 2022), we applied supreme court precedent that "[t]he interpretation of a statute is a question of law for which the standard of review on appeal is also de novo. *Id.* (citing *Dancy v. State*, 287 So. 3d 931, 935-36 (¶14) (Miss. 2020) (quoting *Rex Distrib. Co. v. Anheuser-Busch LLC*, 271 So. 3d 445, 449 (¶13) (Miss. 2019)))." Further, any issue as to whether the chancery court gave deference to the BTA's interpretation of the statute is "of no moment" because our review is de novo. *Comcast of Georgia/Virginia Inc.*, 300 So. 3d at 536 (¶¶17-18).

¶23. We find that the statute has two requirements that must be met before a purchase of tangible personal property is "excepted" from the 7% retail sales tax. First, the purchaser must be licensed under section 27-65-27 if it is located in Mississippi. Second, the purchaser must be a retailer who is making the purchase to sell or rent the items purchased in the

---

[9] Toolpushers contends that the decision in *Mississippi Department of Revenue v. Hotel and Restaurant Supply*, 192 So. 3d 942, 945 (Miss. 2016), concerning the interpretation and application of section 27-65-5(2), should be considered *in pari materia* with our interpretation of section 27-65-5(1). However, we find that these two provisions apply to different revenue collection provisions, and the language used in each provision is materially different from the other. The phrase "good faith" is not used in section 27-65-5(2) and is not mentioned in *Hotel and Restaurant Supply*. This case does not control our interpretation of section 27-65-5(1).

regular line of the business. The statute is clear and unambiguous in this regard, and therefore the rules for statutory interpretation are not relevant. While possession of the permit itself satisfies the first requirement, it does nothing on its face to satisfy the second requirement. That determination was not made and could not have been made by MDOR at the time a permit was issued pursuant to section 27-65-27. Instead, that determination had to be made at the time of each purchase or sale. Since the entity making the sale was responsible for collecting and remitting the retail sales tax to the State, the determination had to be made, in this case, by Toolpushers.

¶24. The evidence submitted by Toolpushers in support of its motion for summary judgment, and in opposition to the motion for summary judgment filed by MDOR, shows that as to the sales at issue, Toolpushers did nothing more than accept the permits when the purchasers presented them. There is no evidence that Toolpushers asked any questions of the purchasers concerning the nature of their business or the purpose of the purchases. By Toolpushers' own admission, it felt that it was not required to do anything more to justify its failure to collect the 7% retail sales tax as required by the statutes cited above. Accordingly, we find that Toolpushers did not have a good faith basis to believe that the sales that are the subject of the MDOR assessment were wholesale sales.

¶25. Finally, Toolpushers argues that any interpretation of the statute that would require more than what was done creates constitutional issues. Toolpushers argues that MDOR is applying such an interpretation "without any criteria or guidelines for what is considered *good faith* under the statute." It argues that this creates due process, equal protection, and

15

separation of powers issues. Further, Toolpushers seems to argue that any additional requirement would constitute a burden on interstate commerce. These arguments are not well developed on appeal. In *Reading v. Reading*, 350 So. 3d 1195, 1196 (¶19) (Miss. Ct. App. 2022), the Court explained:

> Mississippi Rule of Appellate Procedure 28(a)(7) governs the argument section of appellate briefs, and states, "The argument shall contain the contentions of appellant with respect to the issues presented, and the reasons for those contentions, with citations to the authorities, statutes, and parts of the record relied on." The rule "does not simply require a party to mention authority; the authority must be used to develop the argument in a meaningful way." *Walker v. State*, 197 So. 3d 914, 919 (¶25) (Miss. Ct. App. 2016) (emphasis added) (quoting *Archer v. State*, 118 So. 3d 612, 621 (¶29) (Miss. Ct. App. 2012)). Arguments that do not comply with the rule are procedurally barred. *Hill v. State*, 215 So. 3d 518, 524 (¶10) (Miss. Ct. App. 2017).

We find that Toolpushers has failed to comply with Mississippi Rule of Appellate Procedure 28(a)(7) by failing to develop meaningful legal arguments in support of each of these contentions and that these issues are procedurally barred.

¶26. The chancery court denied Toolpushers' motion for summary judgment and, as to MDOR's motion for summary judgment, found that MDOR was entitled to judgment as a matter of law. As noted above, we review the grant or denial of summary judgment de novo. In *TransMontaigne Operating Co. v. Loresco I LLC*, No. 2021-CA-00980-SCT, 2023 WL 2960768, at *2 (¶12) (Miss. Feb. 2, 2023), the supreme court stated:

> We review a trial court's summary-judgment rulings de novo, "viewing the evidence 'in the light most favorable to the party against whom the motion has been made.'" *Karpinsky v. Am. Nat'l Ins. Co.*, 109 So. 3d 84, 88 (Miss. 2013) (quoting *Pratt v. Gulfport-Biloxi Reg'l Airport Auth.*, 97 So. 3d 68, 71 (Miss. 2012), *abrogated on other grounds by Wilcher v. Lincoln Cnty. Bd. of Supervisors*, 243 So. 3d 177 (Miss. 2018)). "Summary judgment is appropriate and 'shall be rendered' if the 'pleadings, depositions, answers to

interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Id*. (citing Miss. R. Civ. P. 56(c)).

Based upon our de novo review of the record in this case, we find that Toolpushers failed to create a genuine issue of material fact to show that it was entitled to relief on appeal from the BTA's order.

## CONCLUSION

¶27.    Since we find that MDOR was entitled to judgment as a matter of law, the judgment of the chancery court is affirmed.

¶28.    **AFFIRMED.**

   **BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND SMITH, JJ., CONCUR.**